UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                           :

MICHELLE HOLUBAR, and           :
BJORN J. HOLUBAR,             :
                                           :

                  Plaintiffs,    :

      v.                                   :     2007 CV 7185
                                           :     (S. Robinson/M. Fox)

TOM ALLEN, aka                  :
TOMMY ALLEN, aka            :
THOMAS ALLEN, dba          :
TOM ALLEN EXCAVATING, and   :
JOAN ALLEN,                   :
                                           :

                  Defendants.   :

                                           :
-----------------------------------------------------------X

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
OR IN THE ALTERNATIVE IN SUPPORT OF PLAINTIFFS'
<u>MOTION FOR LEAVE TO FILE AMENDED COMPLAINT</u>**

Bjorn J. Holubar (BH-9691)
575 Madison Avenue, 10th Floor
New York, New York 10022
1-516-446-1546 direct phone
1-646-417-6017 direct fax
1-646-334-8312 phone
1-212-605-4955 fax
bholubaresq@optonline.net

1

# TABLE OF CONTENTS

Table of Contents………………………………………………………………………2

Table of Authorities ………………………………………………………………3

INTRODUCTION……………………………………………………………………...5

UNDISPUTED FACTS………………………………………………………………...6
      A.    The Parties………………………………………………………………...6
      B.    The Parties' Relationships…………………………………………………6

ARGUMENT………………………………………………………………………...…9
   I.      OPPOSITION TO DEFENDANTS' MOTION TO DISMISS…………………9

     A.    Defendants are Unable to Meet the Standard of Review
          for Motions to Dismiss……………………………………………………9

     B.    Plaintiffs Effectively Alleged Defendants' Factual Conduct
          in Support Plaintiffs' Legal RICO Claim…………………………………9

           1.  Defendants' Violation of RICO…………………………………...10
                a.  Enterprise…………………………………………………11
                b.  Pattern of Racketeering Activity…………………………12
                    i.      Continuity……………………………………13
                    i.      Closed Ended Continuity……………………14
                    iii.    Open Ended Continuity………………………16
                c.  Plaintiffs' Complaint Survives Defendants' Remaining Two (2)
                   Tangential Challenges………………………………………17

   II.     IN THE ALTERNATIVE, SUPPORT OF PLAINTIFFS'
         MOTION FOR LEAVE TO FILE AMENDED COMPLAINT………………18

     A.    The Efficient Administration of Justice Requires
          Plaintiffs' be Allowed Leave to Amended the Complaint…………………18

     B     Defendants Suffer No Prejudice
          Plaintiffs Should be Afforded Leave to Amend…………………………18

CONCLUSION…………………………………………………………………….…**20**

Table of Exhibits…………………………………………………………………21

## TABLE OF AUTHORITIES

**STATUTES**
    <u>FEDERAL</u>
Federal Rules of Civil Procedure, Rule 12…………………………………………………*passim*
Federal Rules of Civil Procedure, Rule 15……………………..…………………..….18
RICO……………………………………………………………………...............*passim*
Organized Crime Control Act of 1970…………………………………………………14
18 U.S.C. § 1341……………………………………………………………...…………12
18 U.S.C. § 1343……………………………………………………………….……...…12
18 U.S.C. § 1961……………………………………………………………………*passim*
18 U.S.C. § 1962(c)…………………………………………………………………...5, 10

    <u>STATE</u>
New York Lien Law 79-a…………………………………………………………………12

**CASES**
*Allen v. New World Coffee, Inc.*, 2001 WL 293683 *6 (SDNY Mar. 27, 2001)………………...16

*Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*,
    268 F.3d 103 (2d Cir.2001)……………………………………………………………10

*Barticheck v. Fidelity Union Bnk/First National State*, 832 F.2d 36 (CA3 1987)…...…………14

*Beauford v. Helmsley*, 65 F.2d 1386 (2d Cir.), *vacated and remanded*,
    109 S.Ct. 3326, *original decision adhered to*, 893 F.2d 1433 (2d Cir. 1989)……….12, 15

*Bernheim v. Litt*, 79 F.3d 318 (2d Cir.1996)……………………………………………... 9

*Conley v. Gibson*, 355 U.S. 41 (1957)……………………………………………………9

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229 (2d Cir.1999)………….12

*De Falco v. Bernas*,
    244 F.3d 286 (2d Cir.), cert. denied, 122 S.Ct. 207 (2001)…………………………10, 16

*Foman v. Davis*, 371 U.S. 178 (1962)………………………………………………...19

GICC *Capital Corp. v. Technology Finance Group, Inc* 67 F.3d 463 (2d Cir.1995)………..12, 16

*Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*
    128 F.3d 59 (2d Cir.1997)…………………………………………………………...9

In *H.J., Inc. v. Northwestern Bell Telephone Co.*, 109 S.Ct. 2893 (1989)…………..12, 13, 14, 16

3

*Jordan (Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd.,*
154 F.Supp.2d 682 (SDNY 2001)...................................................................16

*Manhattan Telecommun. Corp., Inc. v. DialAmerica Mk, Inc.,*
156 F.Supp.2d 376 (SDNY 2001)................................................................. 11

*Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2001)..............................19

*Oak Beverages, Inc. v. Tomra of Massachusetts*, LLC, 96 F.Supp.2d 336, 346 (SDNY2000)....12

*Official Publications, Inc. v. Kable News Co.*, 884 F.2d 664 (2d Cir. 1989)... ... ... ... ... .........15

*Procter & Gamble v. Big Apple Industrial Buildings, Inc.*, 879 F.2d 10 (2d Cir. 1989)...........15

*Rodolico v. Unisys Corp.*, 96 F.Supp.2d 184 (EDNY 2000)......................................9

*Pinnacle Consultants, Ltd. V. Leucadia Nat'l Corp.*, 101 F.3d 900 (2d Cir.1996).
96 F.Supp.2d 336 (SDNY2000).......................................................10

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)...................................................10

*United States v. Turkette*, 452 U.S. 576 (1981).......................................................11

*United States v. Morales,*
185 F.3d 74, 80 (2d Cir.1999), cert. denied, 529 U.S. 1010 (2000)........................11

## Other Authorities

S. Rep. No. 91-617....................................................................................14

4

## INTRODUCTION

This Action is brought pursuant to the Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. § 1962(c)("RICO"), complaining of and setting defendants' patterned, open ended enterprise, of criminal racketeering activity effecting interstate commence in connection with actual attempted of no less than five (5) projects germane to plaintiffs, *i.e.* and not limited to: excavation/construction of a road, home foundations and septic fields. Also appended to that Complaint were New York State causes of action. On September 5, prior to defendants' substantive appearance, plaintiffs' amended their Verified Complaint as of right (**Exhibit** 1).

In response to Plaintiffs' 1st Amended Complaint, presently before the Court is defendants' motion pursuant to Rule 12 of the Federal Rules of Civil Procedure ("Fed.R.Civ.Pro."), to dismiss Plaintiffs' RICO claim as defendants' allege plaintiffs failure to state a cause of action, notably plaintiffs' purported further necessity to plead with greater factual specificity : 1) an "enterprise", a 2) "pattern"[1], 3) and while plaintiffs plead the facts with sufficiency, simply identify the sub, sub section under which relief is sought, and 4) the economic prayer for relief.

While as of the date herein discovery is just now being served on defendants' by Plaintiffs' but for the within motion there has been no other substantive action taken or responded to by defendants.

Wherefore, with the following analysis it will become apparent to the Court that defendants' motion should be dismissed.

---

[1] Authority for which defendants site the 7th Circuit divergent from this Circuit and current Supreme Court holdings.

## UNDISPUTED FACTS

A.    The Parties

Plaintiffs, Michelle Thorpe Holubar & Bjorn J. Holubar ("Holubars" or "Plaintiffs), are individual home owners who sought to subdivide a parcel of land on which they lived.

Defendants Tom Allen aka Tommy Allen aka Thomas Allan, all dba Tom Allen Excavating, and defendant Joan Allen, are owners, principle and operators of Tom Allen Excavating, infusing capital and/or receiving compensation therefrom ("defendants"). Defendants purport to have been engaged in the business of excavation and road construction

B.    The Parties' Relationships

Defendants solicited several interrelated projects from the Holubars consisting of the excavation and creation of a private driveway as well as the excavation of three (3) building sites and the three (3) related septic fields. In furtherance of this solicitation, defendants represented prior experience and competencies having excavated and constructed such driveways, foundations and septic fields in the past.

In or about November 2006, defendants mailed copies of four (4) contracts to the Holubars. Then, based on the four (4) mailed contracts and notation thereupon, defendants entered into later discovered fraudulent relations with the Holubars for the construction of a private driveway and other related work ("Project").

Defendants requested that the "House Contracts" and their deposits be entered into at the time of the "Road Contract," but were rejected until the Road Contract was near completion. Defendants also requested a deposit before doing work.

In January 2007, a publically traded stock owned by Holubar was sole by a stock broker in Arizona for a New York company listed on the NASDAQ from which funds were

transferred from New Jersey and a check issued to defendants for a deposit amount of $20,160. At this time defendants represented the driveway would be completed by March 1, 2007. This representation was later found to be false.

In or about February 2007, defendants, particularly Mr. Allen represented via telephone to the Holubars and others that as set forth in his contract, several stages of the project were nearing completion. Also, more specifically defendants, on or about February 16, Mr. Allen represented via telephone to Fishkill Town Judge Frank Cross, Esq., Philipstown Town Judge Steve Tomann, Esq., Michael Colamarino, Judy Colamarino, and the Holubars that the project would be completed or that at least the driveway would be passable by March 1, 2007.

The Holubars, Colamarinos and their attorneys relied on the representations of defendants and concluded a real estate transaction. This transaction would not have been consummated if defendants would have told the truth regarding the completion of the project. In reliance of the telephonic representations of defendants and Allen, believed to be true, defendants were issued payment in the amount of $30,000, later found to be an advance or further trust deposit payment.

Additionally, prior to March 1 defendants requested and pursued the entry of the "House Contracts" and payment of 1 of the 3 deposits, with the subsequent two (2) House Contract deposits being due in April and May from the Holubars. Defendants were informed that the same would be provided when the Road Contract was advanced and the road passable. On March 1 the Project was incomplete, defendants failed to cure but demanded more money.

In April, under fraudulent threat of walking off the job the defendants requested and were retained under oral contract to undertake home improvements (landscaping). These undertakings consisted of the construction of an approximately 200 foot long, 2-6 foot high

7

stone retaining wall, including back filling the wall with dirt and top soil, and grading and York raking the back filling for grass seeding. Defendants failed to fully construct the wall, failed to fully backfill the wall. In furtherance of the construction of the stone wall, Defendants were to also transfer stones and rocks from an adjoining parcel of land and failed to transfer rocks from the adjoining parcel of land in a timely manner, whereby the adjoining landowner reconsidered and elected to keep such stones and rocks, thus requiring the Plaintiffs to purchase the same. But for the fraudulent threat of "walking off the job" defendants would not have been paid close to $8,000 on "non-contract" "home improvements".   And when defendants were placed on notice of a breach for this landscaping and defendants' refusal to cure the same the last payment of $1,700 was stopped.

Defendants continued the fraud and ongoing conduct in requested more advance payments to apply to the Road Contract's purported construction – payments for the road as well as the Houses. Mr. Allen stated to Messrs. White and Holubar that he needed the House Contract deposits as he ran out of money and was "counting on them to pay (his) bills".

On June 6, 2007, the Project was neither passable nor completed and defendants refused to work further on the Project, stating it was "underbid", required more money and therein fraudulently requested the same of Mr. Holubar and project manager Mr. Julius White.

After this, defendants refused to work further on the Project, citing they "[were] not properly equipped with the manpower or equipment" to complete the Project. Defendants were again noticed of breach, additionally defendants stole thousands of dollars in natural resources.

Defendants engage a pattern of illegal and criminal conduct that began before having met plaintiff and one which continues into the future with other victims

8

# ARGUMENT

## III.     OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### A.     Defendants are Unable to Meet the Standard of Review for Motions to Dismiss

When defendants' motion is compared to the Verified Complaint it is clear that defendants cannot muster legal basis to success on a motion to dismiss.

A Fed.R.Civ.Pro. R12 motion is only properly granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996).

When ruling on a motion to dismiss, the Court must accept as true all factual allegations in the Verified Complaint. <u>All reasonable inferences</u> must be drawn in favor of the non-moving party.(emphasis added) *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 62 (2d Cir.1997). It is not for the Court to "weigh the evidence that might be presented at trial; the Court must merely determine whether the complaint itself is legally sufficient ..." *Rodolico v. Unisys Corp.*, 96 F.Supp.2d 184, 186 (EDNY 2000).

Defendants are unable to overcome these standards and as such defendants' motion to dismiss must be denied as the Holubars plead their claims with detailed specificity.

### B.     Plaintiffs Effectively Alleged Defendants' Factual Conduct in Support Plaintiffs' Legal RICO Claim

The Holubars' factual foundation is contained is well excess of 75 detailed paragraphs and sub paragraphs setting forth dates, witness and locations to establish defendants' criminal enterprise/ ongoing racketeering activities[2], that effects interstate commerce (as admitted by

---

[2] Defrauding and usurping lien law trust proceeds via mail, telephonic and "personal" conduct Verified Complaint, and not limited to: 12, 16, 18, 19, 21, 85-94.

defendants in their motion)[3], existing *in* both a closed and open ended continuity[4] and have clearly plead the elements of RICO as requested by defendants *i.e.* "conducting or participating in the conduct of an enterprise through a pattern or [*sic*] racketeering activity; . . " without actual direct citation to the same (Complaint ¶¶ 6-75).

Contrary to defendants representations the law in this Circuit is that to establish a RICO claim pursuant to 18 U.S.C. § 1962(c), plaintiff must prove: "(1) a violation of the RICO statute ... (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107 (2d Cir.2001); *Pinnacle Consultants, Ltd. V. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir.1996). That is it.

Defendants take no issue with points 2 and 3 above but limitedly challenge point 1 and therein only with respect to the sufficiency with which the complaint articulated such RICO violations 1[5]. Defendants are askew and miss the point. Defendants either misapply the law or digress into areas not wholly applicable for the maintenance of a RICO complaint.

## 1. Defendants' Violation of RICO

The Holubars plead defendants' violation(s) of Section 1962(c) having properly pled such violation in demonstrating: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *De Falco v. Bernas*, 244 F.3d 286 (2d Cir.), cert. denied, 122 S.Ct. 207 (2001), quoting, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

---

[3] Such admissions as to issue the interstate impact is irrefutable and to the extent defendants argue "significance" the same is better served before the trier of fact - $200,000 has direct and indirect impacts on interstate commerce – its inescapable and further absconding with plaintiffs' trust proceeds defendants ventured to Florida to "take care of some business".

[4] Exhibits 2-5; Complaint, and not limited to ¶¶ 49-75

[5] Defendants also take issue with Plaintiffs' RICO's claim as economic damage which is a question of fact and one that is best served post discovery. Simply put to challenge an entitlement to an economic award – before the award is provided placed the cart before the horse

Defendants take no issue with the complained of conduct, injury or the cause of such injury so herein the analysis will look to the elements of "enterprise" "pattern" and those of what qualifies as "racketeering"

    a.    **Enterprise**

The Holubars' Action plead, and defendants factually effected, a RICO "enterprise' as defined in the statute, which includes any "individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

Contrary to defendants' contentions, a RICO enterprise need not be a formal corporation, group or organization, in support of which defendants cite inapplicable and tangential law, distinguishable from the facts herein and not controlling in this District.

Rather, the statue is and was satisfied herein by a showing of a formal or informal group of persons, "associated for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981), see also *United States v. Morales*, 185 F.3d 74, 80 (2d Cir.1999), cert. denied, 529 U.S. 1010 (2000); *Manhattan Telecommun. Corp., Inc. v. DialAmerica Mk, Inc.*, 156 F.Supp.2d 376, 380 (SDNY 2001).

As such at Bar the defendants have been engaging an "enterprise" through their complained of individual and collective actions *vis a vi* "Tom Allen Excavating" as well as Tom Allen, individually. Verified Complaint ¶¶ 6, 7, Exhibits 2-5. To *wit*, defendants Tom Allen and Joan Allen both own and operate the purported unincorporated business Tom Allen Excavating. *Id.* Both defendants procure revenue from said business and both individuals "invest" money into the business' continued operation. *Id.* The common purpose is even clearer – the solicit persons to allegedly provide excavation services and therein secure an advance deposit through

fraudulent representations. *Id* at ¶¶ 16, 18-19. When in receipt of said deposit rather than maintain the same in trust pursuant to NY Statutory law Lien Law 79-a and apply the same, if necessary, to the work at hand the defendants rather simply use and convert the trust deposit for personal use. *Id* at ¶ 44.

Plaintiffs' have established defendants "enterprise" in accordance with the statute and controlling precedent.

### b.    Pattern of Racketeering Activity

Plaintiffs have plead with ample sufficiency numerous actions of defendants that comport with this Circuit's requirements to establish a "pattern of racketeering activity"

A "pattern of racketeering activity," requires a showing of at least two (2) related predicate acts of racketeering activity. 18 U.S.C. § 1961(5); *Oak Beverages, Inc. v. Tomra of Massachusetts*, LLC, 96 F.Supp.2d 336, 346 (SDNY2000). Predicate acts of racketeering activity include a variety of federal and state criminal offenses including the federal mail and wire fraud statutes. 18 U.S.C. § 1961(1); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud). While federal mail and wire fraud constitute RICO predicate acts, common law fraud under state law does not constitute such an act. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir.1999).

A "pattern" of racketeering activity requires a showing that the predicate acts relied upon are "related, and that they amount to or pose a threat of continued criminal activity." *Cofacredit*, 187 F.3d at 242, quoting, *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). When seeking to satisfy the continuity requirement, a plaintiff must show that the defendants' activities were "neither isolated or sporadic." GICC *Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 467 (2d Cir.1995), quoting, *Beauford v. Helmsley*, 865 F.2d 1386, 1391 (2d

Cir.1989). The element of continuity may be satisfied by a showing of either "closed ended continuity" or "open-ended continuity." *H.J., Inc.*, 492 U.S. at 239.

At hand the Court need not look past the Verified Complaint to see that the actions of defendants were neither isolated nor sporadic. Therein, in the Verified Complaint plaintiffs were frequently induced into contract by defendants' solicitation and mailing of no less than four (4) contracts. Exhibits 2-5.[6]Additionally, plaintiffs were further fraudulently induced to remit additional proceeds in February 2007 *via* phone. Complaint ¶¶ 18, 19.

Additionally, defendants made and continued to make numerous written and oral misrepresentations to fraudulently induct remittance of payments. Defendants actions continued even after in the solicitation of "side work" as indicated in the Complaint at 26 *et seq.* through the mail and wire. Furthermore defendants maintained and would have continued to maintain their fraudulent on conduct but for having been terminated. To *wit*, there were no less than three (3) additional contracts those defendants fraudulently sought and pressed for illicit and arguably illegal advanced payment on.

Plaintiffs have plead the minimum two (2) requisite elements, and allege others, and thus the sufficiently of the "patterned" racketeering"

### ii.    Continuity

Plaintiffs plead both closed and open ended continuities.

18 U.S.C. § 1962(c) makes it unlawful for persons employed by or associated with enterprises to conduct the affairs of such an enterprise "through a pattern of racketeering activity . . ." In *H.J., Inc. v. Northwestern Bell Telephone Co.*, 109 S.Ct. 2893 (1989), the Supreme Court undertook to identify and define the ingredients and relatedness of a "pattern of racketeering

---

[6] Furthermore, "local" inquiry presented additional non-parties, who. when queries, will complain of defendant actions set forth in the within Action.

activity." *H.J.* holds that a "pattern of racketeering activity" requires the combination of predicate acts related to each other and continuity of conduct. 109 S.Ct. at 2900.

As for relatedness, the *H.J.* majority derived from Title X of the Organized Crime Control Act of 1970, of which RICO formed Title IX, the rule that to be related, predicate acts must have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 2901. The Court continued "[t]o establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." *Id.* As to continuity, the *H.J.* majority wrote:

> "'Continuity' is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *See Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 39 (CA3 1987). It is, in either case, centrally a temporal concept -- and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time."

> "Congress was concerned in RICO with long-term criminal conduct. Often RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated. *See* S. Rep. No. 91-617, at 158." *Id.* at 2902.

In either event defendants' conduct equated criminal actions and omissions satisfying the requirements of continuity

### iii.    Closed Ended Continuity

Plaintiffs have plead defendants' conduct, conduct that is neither isolated nor specific, and but for defendants' termination by plaintiffs would have continued for years into the future with hundreds of thousands of dollars. Plaintiffs plead and can prove close ended continuity.

In *Beauford v. Helmsley*, the Second Circuit defined Congress's goal in defining "pattern of racketeering activity" as to exclude from the reach of RICO criminal acts that were merely "isolated" or "sporadic." *Beauford*, 865 F.2d 1386 (2d Cir.), *vacated and remanded*, 109 S.Ct. 3326, *original decision adhered to*, 893 F.2d 1433 (2d Cir. 1989). Consequently, Judge Kearse wrote for the *en banc* majority, "we must determine whether two (2) or more acts of racketeering activity have sufficient interrelationship and whether there is sufficient continuity or threat of continuity to constitute such a pattern." *Id.* at 1391.

And notably the 2nd Circuit in *Procter & Gamble v. Big Apple Industrial Buildings, Inc.*, 879 F.2d 10, 18 (2d Cir. 1989) set the postulation that "the complaint must provide allegations sufficient to <u>infer</u> that an enterprise exists, and that the acts of racketeering were neither isolated nor sporadic" (emphasis added); allegations sufficient which claimed "that defendants engaged in at least five separate fraudulent schemes". *Id.*

In the case at bar, plaintiff's RICO claim arises out of no less than five (5) contracts - four (4) written and no less than one (1) oral -- with an aggregate to be spent in excess of $200,000. Plaintiffs were fraudulently induced through defendants' continuous use of mail and wire facilities to enter into no less than one (1) written and one (1) oral contract for excavation services. Furthermore, defendants presented and pressed for payment on the three (3) remaining written "house" contracts – continually to Mr. Holubar, Mr. Julius White and others. Thus, the complaint herein is legally sufficient for the following reasons as articulated in the 2nd Circuit as alleging that the numerous occasions and conduct of defendant sufficient to set forth acts that cannot be deemed, as a matter of law, "isolated or sporadic." *Id.* at 1392, *Official Publications, Inc. v. Kable News Co.*, 884 F.2d 664, 666-68 (2d Cir. 1989)(allegedly fraudulent acts occurred "pursuant to a longstanding contract, over a considerable period of time").

15

iii.    **Open Ended Continuity**

Plaintiffs can also establish and prove defendants violation of RICO and therein satisfy the continuity element by a showing of "open ended" continuity.

To establish open ended continuity, it need not be shown that predicate acts were engaged in over an extended period of time. Rather, plaintiff must show that there was a threat of continuing criminal activity "extending indefinitely into the future." *H.J., Inc.,* 492 U.S. at 242. This threat of continuing criminal activity must, therefore, extend "beyond the period during which the predicate acts were performed." *De Falco,* 244 F.3d at 323, quoting *Cofacredit,* 187 F.3d at 242. The key considerations to open ended continuity are the nature of the enterprise and the predicate acts alleged. *Id* at 242. If the enterprise alleged is engaged in "inherently unlawful" acts (theft of trust proceeds, wire and mail fraud - herein), there is a threat of continuing criminal activity (future contracts, ongoing requests the defendants *method operandi*) an open ended continuity exists. *Id.*

On the other hand, if the enterprise is engaged in a legitimate business, an allegation of open ended continuity requires evidence supporting an inference that the predicate acts are the regular way of doing business, or that the nature of the predicate acts themselves implies a threat of continuing criminal activity (theft of trust proceeds, wire and mail fraud, future contracts, ongoing requests the defendants *method operandi*). *Id.* see also *GICC Capital Corp.,* 67 F.3d at 466; *Allen v. New World Coffee, Inc.,* 2001 WL 293683 *6 (SDNY Mar. 27, 2001); *Jordan (Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd.,* 154 F.Supp.2d 682, 694 (SDNY 2001).

At Bar defendants' have engaged no less than five (5) actions that would exceed 11 months and continue well into the future namely the road contract, demands for payment and

lack of performance – performance that was delayed intentionally to drag out and procure additional payments on supplemental actions.  Furthermore, defendants' conduct in requesting and usurping trust proceeds is criminal and action that occurred prior hereto and upon information and belief continuing now and into the future.  Defendants' conduct past, present and future "implies" the threat of criminality will continue into the future.

Additionally, as is indicated by the attached four (4) contracts is not limited to a singular or even two (2) actions but rather fourth written actions for in excess of $200,000 that would necessarily take no less than two (2) years to complete.  Such conduct and but for defendants being terminated is a clear indication that the threat of criminal actions (wire/mail fraud and the conversion of trust proceeds)

Defendants' actions are in violation of RICO under a closed ended continuity and with express particularity an open ended continuity of ongoing conduct.

### c.    **Plaintiffs' Complaint Survives Defendants' Remaining Two (2) Tangential Challenges**

Plaintiffs have sufficiently and in a detailed fashion articulated the complained of conduct of defendants.  Without citing the exact sub, sub section (1961 (c)) of the Statute there is no other statute that applies.  It is crystalline, and such diversionary tactic a rouse and a non material omission.  Even defendants note that there are in excess of 75 paragraphs and sub paragraphs specifically detailing the facts and circumstances of defendants' illegal and illicit conduct.  Plaintiffs plead their causes of action against defendants with ample sufficiency.

Similarly, defendants request that Plaintiffs' First Cause of Action be Stricken based upon an economic prayer is unpersuasive.  The Prayer for relief seeks that which plaintiffs' request should they be proven correct on defendants' liability.  It is the second element I-prove

liability and then 2-prove right to damages. Simply put defendants repetitive dissertation is without legal foundation in a Rule 12 application.

## II.    IN THE ALTERNATIVE, SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Pursuant to Fed.R.Civ.Pro. R. 15(a) Plaintiffs hereby respectfully submit this Alternative Memorandum in support of their Motion for Leave to File Amended Complaint (attached hereto as **Exhibit** 6).

### B. The Efficient Administration of Justice Requires Plaintiffs' be Allowed Leave to Amended the Complaint

Federal Rule of Civil Procedure 15(a) requires that leave to file an amended complaint be "freely given when justice so requires." This standard is readily met here, as the more detailed description of the markets at issue in the Amended Complaint narrows the scope of the issues presented in this litigation and will prevent the Court's time from being wasted at trial.

### B    Defendants Suffer No Prejudice Plaintiffs Should be Afforded Leave to Amend

Federal Rule of Civil Procedure 15(a) contemplates that a court will freely grant leave to file an amended complaint when the interests of justice so require. Additionally, the 2nd Circuit has a liberal policy of allowing amendments to a complaint – particularly when there is not statute of limitation having run nor there being prejudice to the defendant. Granting this motion allows Plaintiffs to describe in further detail at issue in this Action, eliminating disputes over form that would waste this Court's time.

The U.S. Supreme Court determined that "[i]n the absence of . . . undue delay, bad faith or dilatory motive . . . undue prejudice . . . futility of amendment, *etc* .-- the leave sought should .

. . be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). The 2nd Circuit applies a balancing test of these factors, which turns on *substantial prejudice* to the opposing party. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)(quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In its original complaint, Plaintiffs described with specificity defendants' conduct as it pertained to one series of actions and to comport more fully with the applicable RICO statute would offer the Amended Complaint that further outlines the open ended and continuous illicit conduct of defendants that, but for this complaint and their termination, would have continued against Plaintiffs and upon information and belief still ongoing with defendants – albeit with 3rd parties.

Defendants will not suffer undue prejudice from the filing of Plaintiffs' Amended Complaint because: 1) the open ended continuity and patented conduct is more specific than that asserted in the Complaint; 2) the plaintiff's injury is maintained from the Complaint, 3) no discovery has been initiated or responded to by defendants; and 5) the newly-alleged facts in the Amended Complaint are already well-known to defendants and in their possession.

Leave to amend should be respectfully provided as no such prejudice to defendants exists here. To *wit*, the facts more particularly described in the Amended Complaint are and have been well-known to defendants, because it was their solicitations and demands for payments, in furtherance of their fraudulent conduct, complained of and described in the Amended Complaint. There are no new claims rained by plaintiffs. There is no statutory bar even remotely on the horizon. The plaintiffs and defendants identified in the Amended Complaint were all at issue in the original Complaint. And finally, the parties have not even engaged discovery.

## **CONCLUSION**

For the above reasons, defendants' motion to dismiss should be denied or in the

alternative plaintiffs' motion for leave to amend granted and the appended Amended Complaint

entered.

Respectfully submitted,

Bjorn J. Holubar /s/

Dated: October 29, 2007
      New York, New York

Bjorn J. Holubar (BH-9691)
575 Madison Avenue, 10th Floor
New York, New York 10022
1-516-446-1546 direct phone
1-646-417-6017 direct fax
1-646-334-8312 phone
1-212-605-4955 fax
bholubaresq@optonline.net

Of Counsel -- Christopher B. Turcotte, Esq.

**TABLE OF EXHIBITS**

EXHIBIT 1 – Amended Complaint of September 5, 2007

EXHIBIT 2 – "Road Contract"

EXHIBIT 3 – "House A Contract"

EXHIBIT 4 – "House B Contract"

EXHIBIT 5 – House C Contract"

EXHIBIT 6 – Proposed Amended Complaint of October 29, 2007

Bjorn J. Holubar (BH-9691)
575 Madison Avenue, 10th Floor
New York, New York 10022
1-516-446-1546 direct phone
1-646-417-6017 direct fax
1-646-334-8312 phone
1-212-605-4955 fax
bholubaresq@optonline.net

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                    :

MICHELLE HOLUBAR, and           :
BJORN J. HOLUBAR,             :
                                      :
                    Plaintiffs,  :
     v.                            :      2007 CV 7185
                                      :      (S. Robinson/M. Fox)
TOM ALLEN, aka                 :
TOMMY ALLEN, aka           :
THOMAS ALLEN, dba          :
TOM ALLEN EXCAVATING, and   :
JOAN ALLEN,                 :
                                      :
                    Defendants.  :
                                      :
-------------------------------------------------------X

## 1st AMENDED VERIFIED COMPLAINT & JURY DEMAND

### Preliminary Statement

    Plaintiffs, Michelle Thorpe Holubar and Bjorn J. Holubar bring this action to remedy a pattern of behavior and/or conduct by Defendant, specifically including Civil RICO – mail & wire fraud; breach of contract law, violations of New York's Lien Law § 79-a & GBL § 771; conversion; fraud and unjust enrichment.

## Jurisdiction & Venue

1.      This action arises under the 18 U.S.C. § 1341; 18 U.S.C. § 1343; 18 U.S.C. § 1961-1968 *et seq.*

2.      This Court has jurisdiction of this action under 28 U.S.C. § 1331.

3.      The Plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a) over any and all state law claims and against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case and controversy.

4.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) *et seq.*

### Parties

5.      Plaintiffs, Michelle Thorpe Holubar & Bjorn J. Holubar ("Holubars"), are citizens of the United States, with a place of residence in Putnam County, State of New York.

6.      Defendant Tom Allen aka Tommy Allen aka Thomas Allan, all dba Tom Allen Excavating, is a citizen of the United States, and was at all times relevant herein a resident of the Town of Philipstown, County of Putnam, State of New York.

7.      Defendant Joan Allen, upon information and belief is an owner, principle or investor in Tom Allen Excavating, infusing capital into the business and/or receiving compensation therefrom and dba Tom Allen Excavating.

8.      Defendants collectively are referred to as "Allen".

2

## Facts

9.      Tom Allen solicited a project from the Holubars.

10.     The project consisted of the excavation and creation of a private driveway.

11.     In furtherance of this solicitation, Allen represented that he has excavated and constructed such driveways in the past.

12.     In or about November 2006 Allen mailed a copy of the proposed contract to the Holubars.

13.     Thereafter, based on the mailed contract and the handwritten notation thereupon, Allen entered into contractual relations with the Holubars for construction of a private driveway ("Project") in the town of Philipstown, County of Putnam, State of New York.

14.     Allen requested a deposit before doing work.

15.     In January 2007, a deposit of $20,160 was remitted to Tom Allen by the Holubars.

16.     Allen represented the driveway would be completed by March 1, 2007.

17.     This representation was later found to be false.

18.     In or about February 2007 Tom Allen represented via telephone to the Holubars and others that several stages as set forth in his contract concerning the project were nearing completion.

19.     On or about February 16, 2007, Tom Allen represented via telephone to Fishkill Town Judge Frank Cross, Esq., Philipstown Town Judge Steve Tomann, Esq.

3

Michael Colamarino, Judy Colamarino and the plaintiffs that the project would be completed or at least the driveway passable by March 1, 2007.

20. The Holubars, Colamarinos and their attorneys relied on the representations of Allen and concluded a real estate transaction.

20a. Said transaction that would not have been consummated but for the misrepresentations of Allen.

21. In reliance upon the telephonic representations of Allen, believed to be true, Allen was issued payment in the amount of $30,000 at this time (later to be found to be an advance).

22. On March 1, 2007, the Project was neither passable or completed as previously promised by Allen.

23. Allen was requested to remedy and cure the breach.

24. On April 1, 2007, the Project was neither passable or completed.

25. Allen was requested to remedy and cure the breach.

26. In April Allen undertook home improvements not set forth in the contract between the parties.

26a. Such undertakings were not reduced to writing by Allen.

26b. Such undertakings consisted of the construction of an approximately 200 foot long 2-6 foot high stone retaining wall, back filling the wall with dirt and top soil, grading and York raking the same for grass seeding.

26bi. Allen failed to fully construct the wall.

26bii. Allen failed to fully backfill the wall.

4

26c. In furtherance of the construction of the stone wall Allen was to transfer stones and rocks from an adjoining parcel of land.

26ci. Allen failed to transfer rocks from the adjoining parcel of land in a timely manner, whereby the adjoining landowner reconsidered and elected to keep such stones and rocks requiring the purchase of stones and rocks.

26d. Allen was paid for such services yet failed to complete any element of the above.[1]

27. On May 1, 2007, the Project was neither passable nor complete.

28. Allen was requested to remedy and cure the breach.

29. Allen represented that the driveway would be completed by the June 6 NYS DOT permit expiration date.

30. On June 1, 2007, the Project was neither passable or completed.

31. On June 6, 2007 the Project was neither passable or completed.

32. Allen refused to work further on the Project stating he "underbid" the Project and that it required more money.

32a. Allen refused to work further on the Project stating that he "was not properly equipped with manpower or equipment" to complete the Project.

33. Allen was again put on notice of his breach.

34. It was then discovered that without authority or consent, Tom Allen removed natural resources from the Holubars' property.

---

[1] Allen was paid close to $8,000 on "non contract" "home improvements" and then when the Holubars were placed on notice of Allen's breach of contract and refusal to cure the same in June the last payment of $1,700 was stopped, notwithstanding Allen's refusal to even complete the "wall project".

35. Real property sales have been lost on account of the project being incomplete and in-passable.

36. In an attempt to again mitigate Allen's breached bids from potential replacement excavators who were solicited.

37. A replacement contractor has been retained in excess of the contract price agreed to by Allen.

38. It was later discovered and confirmed that Allen failed to effect/was negligent in effecting what minimal work he did complete because as he was not in compliance with the engineer's plans, *e.g.* and not limited to the principle driveway is off center by close to 20 feet, therein encroaching another northerly located parcel of property.

39. It was later discovered and confirmed that Allen failed to effect/was negligent in effecting what minimal work he did complete because as he was not in compliance with the engineer's plans, *e.g.* and not limited to the driveway's elevation was "well above the designated grade", requiring further topographic analysis and excavation.

40. It was later discovered and confirmed that Allen failed to effect/was negligent in effecting what minimal work he did complete because as he was not in compliance with New York States DEC requirements, *e.g. and not limited to* water control.

41. It was later discovered and confirmed that Allen failed to effect/was negligent in effecting what minimal work he did complete because as he was not in

6

compliance with New York States DEC requirements, *e.g.* and not limited to erosion control.

42.   It was later discovered and confirmed that Allen failed to effect/was negligent in effecting what minimal work he did complete because as he was not in compliance with pre work elements, *e.g.* confirmation of the non existence of underground electrical and utilities on the Project.

43.   It was later discovered and confirmed that Allen fraudulently induced the Holubars' contractual entrance as Allen had never before effected a driveway of this design or size.

44.   Additional actions have been undertaken in an attempt to further mitigate and/or address the damages caused by Allen, e.g. tree clearing, stumps removed, raw and construction materials purchased, demands for refund of the deposit were made, demands for refund of moneys paid pursuant to the contract for services not rendered/completed/or negligently performed, and property lot lines must now be re surveyed, adjusted, priced and marketed accordingly.

45.   The above actions, misrepresentations and omissions of Allen have all required expenditure of time, resources and monetary resources above and beyond the contract price in Allen's contract.

7

**Causes of Action**

## 1ST CAUSE OF ACTION
### 18 U.S.C. § 1961-1968 *et seq* / 18 U.S.C. § 1341 / 18 U.S.C. § 1343

46.     The Holubars incorporate by reference the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

47      Beginning no later than November 2006 through and until June 2007 the defendants engaged in and devised a fraudulent scheme to secure and defraud the Holubars of monetary resources and abscond with the Holubars' natural resources.

48.     In furtherance of this fraudulent scheme the defendants and others engaged in the following pattern of racketeering activity:

### Mail Fraud

49.     Defendants did knowingly, willfully and intentionally fail to disclose the truth as set forth above and not limited thereto concerning the time of completion of the Project with the sole intent to defraud plaintiffs and others out of monetary proceeds.

50.     Defendants engaged in a pattern of fraudulently knowingly concealed the truth about what happened and matter's status to effect payment.

51.     Defendants intended by their action and testimony to defraud the Plaintiffs, others similarly situated, and thus illegally profited from such fraudulent representations.

52.     In the course of executing the fraudulent scheme to defraud Plaintiffs defendants repeatedly effected communication of contracts and materials through the United States Postal Service to and from this district in violation of 18 U.S.C. § 1341 (mail fraud).

8

<u>Wire Fraud</u>

53.     Defendants did knowingly, willfully and intentionally fail to disclose the truth as set forth above and not limited thereto concerning the time of completion of the Project with the sole intent to defraud plaintiffs and others out of monetary proceeds.

54.     Defendants engaged in a pattern of fraudulently concealing the truth about what happened and matter's status to effect payment.

55.     Defendants intended by their action and testimony to defraud the Plaintiffs, others similarly situated, and thus illegally profited from such fraudulent representations.

56.     In the course of executing the fraudulent scheme to defraud the Holubars defendants repeatedly effected and made telephone call using interstate wire facilities to and from this district in violation of 18 U.S.C. § 1343 (wire fraud).

57.     *To wit* and not limited to the occasion referenced: on or about February 16, 2007, defendants represented *via* telephone to Fishkill Town Judge Frank Cross, Esq., Philipstown Town Judge Steve Tomann, Esq. Michael Colamarino, Judy Colamarino and the plaintiffs that the project would be completed or at least the driveway passable by March 1, 2007.

<u>Scheme To Defraud</u>

58.     Defendants did numerously proffer material false representations.

59.     That the defendant knew or believed to be false

60.     Defendants did numerously omit material facts.

9

61.     Defendant made the material misrepresentation or omission with the intent to induce the Holubars to rely and remit payments otherwise not due for goods (never purchased), services (never rendered) and simply the theft of natural resources.

62.     The Holubars relied on the misrepresentation and omissions of defendants.

63.     The Holubars have been injured as a result of such reliance.

### Promissory Fraud

64.     Defendants did numerously proffer material false representations of future performance that the defendant knew or believed to be false.

65.     Defendants knowingly promised future performance knowing that defendants did not have the proper equipment to effect the services contracted for.

66.     Defendants knowingly promised future performance knowing that defendants did not have the proper man power to effect the services contracted for.

67.     Defendants had no intention of ever performing the future act, and proffered such false promise as the scheme and manner to accomplish an independent fraudulent schemes, *e.g.* payment of the project and the home improvement "wall construction".

68.     Defendant made the material misrepresentation or omission with the intent to induce the Holubars to rely and remit payments otherwise not due for goods (never purchased), services (never rendered) and simply the theft of natural resources.

69.     The Holubars relied on the misrepresentation and omissions of defendants.

70.     The Holubars have been injured as a result of such reliance.

71.     Each of the aforesaid violations by the defendants constitutes an instance of "racketeering activity".

72.    The multiple acts of racketeering activity by the defendants and others were interrelated, part of a common and continuous pattern of fraudulent schemes to defraud and were perpetrated for the same or similar purpose, thus constituting a "pattern of racketeering activity".

73.    As a direct and proximate result of the defendants' fraudulent conduct and schemes by engaging in a pattern of racketeering activity, the Holubars suffered and suffer economic loss.

74.    The Holubars have and continues to be injured by defendants' conduct, actions and omissions.

75.    Such injuries will continue until remedies are redressed by this Court.

## 2nd CAUSE OF ACTION
### New York -- Breach of Contracts

76.    The Holubars reallege paragraphs 1 through 75 as if fully stated herein.

77.    Defendants voluntarily entered into contractual relations with Plaintiffs.

78.    The Holubars had an express written contract providing for services to be rendered, compensation and terms of payment.

79.    Defendants breached that express written contract failing to perform services due, refusing to perform service paid for and refusing future performance.

80.    Defendants profited from such actions and omissions.

81.    Defendants have failed to perform in accordance with the terms of their contract.

82    Defendants are in breach of contract.

83.    The Holubars are and will continue to be injured as a result of Defendants' actions and omissions.

11

84.    The Holubars' injury will continue until remedy by this Court.

### 3rd CAUSE OF ACTION
New York – Violation of Lien Law § 79-a

85.    The Holubars reallege paragraphs 1 through 84 as if fully stated herein.

86.    Defendants voluntarily entered into contractual relations with Plaintiff.

87.    Defendants requested, in writing by USPO, a deposit of $20,160 before commencement of work.

88.    Defendants were paid a deposit by the Holubars $20,160.

89.    Pursuant to New York State Law, Lien Law § 79-a such advance deposit payments were and are to be held in trust until the contracted for projects completion.

90.    Defendants spend such trust deposits on personal expenditures.

91.    Defendants are in violation of Lien Law 79-a.

92.    Demand for the deposits return have been made by the Holubars.

93.    Defendants represented that the Holubars' deposit held in trust by defendants has been expended.

94.    Defendants are in violation of Lien Law 79-a.

95.    The Holubars are and will continue to be injured as a result of defendants' actions and omissions.

96.    The Holubars' injury will continue until remedy by this Court.

### 4th CAUSE OF ACTION
New York - Conversion

97.    The Holubars incorporate by reference the allegations set forth in Paragraphs 1 through 96 as if fully set forth herein.

98.    Defendants converted proceeds held in trust by them for personal gain

12

without right or authority from the Holubars.

99.  Defendants failed to return the above proceeds after demand.

100.  The Holubars have and continue to be injured by defendants' conduct, actions and omissions.

101.  Such injuries will continue until remedies are redressed by this Court.

## 5th CAUSE OF ACTION
### New York – Theft/Conversion

102.  The Holubars incorporate by reference the allegations set forth in Paragraphs 1 through 101 as if fully set forth herein.

103.  Defendants removed natural resources from the Holubars property without authority or consent.

104.  Defendants failed to return the above resources.

106.  Defendants failed to compensate the Holubars for said natural resources.

107.  Defendants converted the Holubars' natural resources to personal use.

108.  The Holubars have and continue to be injured by Defendants' conduct, actions and omissions.

109.  Such injuries will continue until remedies are redressed by this Court.

## 5th CAUSE OF ACTION
### New York - Violation of General Business Law § 771

110.  The Holubars incorporate by reference the allegations set forth in paragraphs 1 through 109 as if fully set forth herein.

111.  Under the provisions of § 771 of the General Business Law of the State of New York, every home improvement contract must contain certain information and be in writing.

13

112. Defendants failed to provide an appropriate contract for the Project and the contract for work, labor and services done at the Holubars home omitting information such as the approximate dates or estimated dates when the work would begin or and be substantially complete and describing specifically the work to be performed, materials to be provided, and agreed upon consideration.

113. The Holubars therefore respectfully request that the Court impose a civil penalty in the amount of $100.00 against the defendants, severably, pursuant to § 773 Subsection 1 of the General Business Law.

114. The Holubars further seek penalties against the defendants severably pursuant to § 772 Subsection 1 of the General Business Law in the amount of $500.00 as a civil penalty, plus reasonable attorneys fees, based upon omissive, false or fraudulent written representations provided by the defendants to the Holubars.

115. The Holubars are and will continue to be injured as a result of defendants' actions and omissions.

116. The Holubars' injury will continue until remedy by this Court.

## 6th CAUSE OF ACTION
### New York - Violation of General Business Law § 771

117. The Holubars incorporate by reference the allegations set forth in paragraphs 1 through 116 as if fully set forth herein.

118. Under the provisions of § 771 of the General Business Law of the State of New York, every home improvement contract must contain certain information and be in writing.

119. Defendants failed to provide any contract for the "wall construction" as detailed in paragraphs 26 et seq detailing the contract for work, labor and services done at

14

the Holubars home omitting information such as the approximate dates or estimated dates when the work would begin or and be substantially complete and describing specifically the work to be performed, materials to be provided, and agreed upon consideration.

120. The Holubars therefore respectfully request that the Court impose a civil penalty in the amount of $100.00 against the defendants, severably, pursuant to § 773 Subsection 1 of the General Business Law.

121. The Holubars further seek penalties against the defendants severably pursuant to § 772 Subsection 1 of the General Business Law in the amount of $500.00 as a civil penalty, plus reasonable attorneys fees, based upon omissive, false or fraudulent written representations provided by the defendants to the Holubars.

122. The Holubars are and will continue to be injured as a result of defendants' actions and omissions.

123. The Holubars' injury will continue until remedy by this Court.

### 7th CAUSES OF ACTION
New York – Negligence, multiple counts

124. The Holubars repeat and reallege the allegations contained in paragraphs 1 through 123 as if fully set forth herein.

125. Defendants owed the Holubars the duties to perform and execute their obligations to the Holubars as contractually provided.

126. Defendants breached their duties to the Holubars were negligent in the performance of their duties see paragraphs 38-42 and not limited thereto.

127. As a result of defendants' breaches of their duties, the Holubars are and continue to be damaged and materially and irreparably injured.

15

128.    Defendants' actions were without concern of defendants' obligations and responsibilities to the Holubars.

129.    The Holubars are and continue to be injured as a result of defendants' actions and omissions.

130.    The Holubars' injury will continue until remedy by this Court.

## 8th CAUSE OF ACTION
### New York – Fraud

131.    The Holubars incorporates by reference the allegations set forth in paragraphs 1 through 130 as if fully set forth herein.

132.    Defendants did knowingly, willfully and intentionally fail to disclose the truth as set forth above.

133.    Defendants engaged in a pattern of fraudulently concealing the truth about what happened and the intention of performance for procurement of funds not otherwise attainable or due.

134.    Defendants intended by their action, conduct and testimony to defraud the Holubars and thus illegally profited from such fraudulent representations.

135.    Defendants intentionally made untrue representation about the ability to complete the Project.

136.    Defendants intentionally made untrue representation about the status of the Project.

137.    The untrue representation were believed by the Holubars and relied upon.

138     That as a direct and proximate result of defendants' fraudulent concealment and conduct, Plaintiffs have been injured both money and property.

16

139. The Holubars have and continue to be injured by defendants' conduct, actions and omissions.

140. Such injuries will continue until remedies are redressed by this Court.

## 9th CAUSE OF ACTION
### New York – Unjust Enrichment

141. The Holubars repeat each and every allegation as set forth above, *et seq.*

142. Defendant has been unjustly enriched through the receipt of payment without rendering any consideration therefore.

143. Defendants' actions are at the sole expense of the Holubars.

144. The Holubars are and will continue to be injured as a result of defendants' actions and omissions.

145. The Holubars' injury will continue until remedy by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, pray this Court render judgment on all causes of action against defendants jointly and severally and award Plaintiffs:

A.   an amount to be determined, but believed in excess of $450,000.00;

B.   an amount as provided for by 18 U.S.C. § 1961-1968 *et seq.*, trebled;

C.   amounts provided for by New York General Business Law § 771

D.   amounts provided for by New York Lien Law § 79-a;

E.   their reasonable costs and attorney fees, and

E.   directing such other and further relief as the Court may deem just and proper and or awardable.

17

## JURY TRIAL DEMANDED

In accordance with the provisions of the Fed.R.Civ.Pro., Plaintiffs hereby demand

a trial by jury of all issues so triable.

### VERIFICATIONS

Michelle Thorpe Holubar

Before me, the undersigned authority, duly authorized to accept acknowledgments and oaths, personally appeared Michelle Thorpe Holubar who after being sworn, deposes and says that she has read the foregoing Verified Complaint affirms under penalty of perjury that the same is true and accurate except for those statements made under information and belief.

NOTARY: _Lisa M. Merardo_

_YORK_

_COUNTY_

_2011_

Dated: September 5, 2007
       New York, New York

Respectfully submitted,

Bjorn J. Holubar (BH-9691)
575 Madison Avenue, 10th Floor
New York, New York 10022
1-516-446-1544 direct phone
1-646-417-6017 direct fax
1-646-334-8312 phone
1-212-605-4955 fax
bholubaresq@optonline.net

18

**EXHIBIT 2 – "Road Contract"**

**Tom Allen Excavating**
**345 Main Street**
**Nelsonville, NY 10516**
**845-265-5598 o**
**845-265-6087 f**

October 15, 2006

Hudson Way LLC
Route 301 & Hudson Way
Cold Spring, New York 10516

*Job:*  ***Proposal for work***
       ***Cold Spring, New York 10516***

Dear Sirs:

Thank you for considering Tom Allen Excavating for the above referenced location. We propose to furnish all labor, equipment, materials needed to complete the following work for the Hudson Way LLC Project as specified on the scope of work.

Work is limited to that which is specified only. It does not include or imply any other work unless specifically listed.

As per the drawings listed as Michelle Thorpe Holubar File #05-119 dated 9/14/06 by Badey & Watson.

1.   ~~Cut Trees from Route 301 to culdesac approximately 25 Feet x 1000 Feet~~
2.   Remove all stumps from road site.
3.   Install all Silt Fences.
4.   Bring road to rough grade
5.   Item #4 road.
6.   ~~Clear Tree~~es and stumps from drainage pond area.
7.   Dig out drain pond.
8.   Install nine (9) Catch Basins.
9.   Install Headwalls at Entrance.
10.  Install stone in all swells.
     (Driveway to Lot #4 included).

**The above work will be performed at the contract price of   $125,800.00\***

Page 1 of 3

**Payment Schedule as follows:**

| | |
|---|---|
| Down Payment to start | $25,160.00 |
| Upon the completion of #1,2,3 | $12,580.00 |
| Upon the completion of #4,5,6 | $18,870.00 |
| Upon the completion of #7 | $12,580.00 |
| Upon the completion of #8 | $25,160.00 |
| Upon the completion of #9 | $18,870.00 |
| Upon the completion of #10 | $12,580.00 |

**Notes:**

In the event an item of work can not go as scheduled in the payment schedule, item of work may be moved to other installment groupings allowing for payments to be made based on work completed.

**\*Exclusions:**

1. Permits, unless specified.
2. Fines, unless due to Tom Allen Excavating negligence.
3. Blasting.
4. Hammering of rock ledge.
5. Any damage to underground utilities, if any, unless marked.
6. Fill, unless specified.
7. Topsoil, unless specified.
8. Finish grading, unless specified.
9. Any water problems or containment.
10. Septic bank run over and above which is specified on drawing; additional cost for bank run at $35.00/yard for material and labor to spread.
11. Fence around drain pond.
12. Any surveying.
13. Any Engineering.

Again, thank you for choosing Tom Allen Excavating. Please feel free to contact us regarding this or any other matter. We welcome your call. Please contact us at 914-447-3143 or 845-265-5598.

Please sign both original copies of this proposal; a fully executed copy will be sent under separate cover for your files.

Very truly yours,

Tom Allen Excavating


Thomas E. Allen

Please Note: This proposal may be withdrawn if not accepted within 30 days.

2 of 3

**Acceptance of Proposal:**

The above prices, specifications and conditions are satisfactory and are hereby accepted. Tom Allen Excavating is hereby are authorized to do the work as specified. Payment will be as outlined above. Finance charges are assessed at a rate of 1.5% per month (annual percentage rate of 18%) on all balances over 30 days. Should the above contracted amount not be paid as per the payment schedule, a mechanics lien will be applied to the project and the purchaser shall be responsible for any and all collections including but not limited to attorney fees and court costs.

_____     11-27-06          _____     11/27/06
Tom Allen Excavating        Date               Hudson Way LLC                Date

Page 3 of 3

**EXHIBIT 3 – "House A Contract"**

24

**Tom Allen Excavating**
**345 Main Street**
**Nelsonville, NY 10516**
**845-265-5598 o**
**845-265-6087 f**

October 15, 2006

Hudson Way LLC
Route 301 & Hudson Way
Cold Spring, New York 10516

***Job:*** ***Proposal for House Site #1***
      ***Cold Spring, New York 10516***

Dear Sirs:

Thank you for considering Tom Allen Excavating for the above referenced location. We propose to furnish all labor, equipment, materials needed to complete the following work for the Hudson Way LLC Project as specified on the scope of work.

Work is limited to that which is specified only. It does not include or imply any other work unless specifically listed.

As per the drawings listed as Michelle Thorpe Holubar File  #05-119 dated 9/14/06 by Badey & Watson.

1.    Cut  Trees for Driveway & House Site.
2.    Remove all stumps from site.
3.    Cut in Driveway & Item #4 same.
4.    Dig for Foundation.
5.    Install Footing Drains & Tar Foundation
6.    Backfill Foundation.
7.    Dig Water & Electric lines.
8.    Clear Septic Area.
9.    Install Septic System as per plan.

**The above work will be performed at the contract price of   $35,500.00***

Page 1 of 3

**Payment Schedule as follows:**

| | |
|---|---|
| Down Payment to start | $ 8,000.00 |
| Upon the completion of #1,2,3,4 | $ 6,500.00 |
| Upon the completion of #5,6,7 | $ 8,000.00 |
| Upon the completion of #8 | $ 8,000.00 |
| Upon the completion of #9 | $ 5,000.00 |

**Notes:**

In the event an item of work can not go as scheduled in the payment schedule, item of work may be moved to other installment groupings allowing for payments to be made based on work completed.

**\*Exclusions:**

1. Permits, unless specified.
2. Fines, unless due to Tom Allen Excavating negligence.
3. Blasting.
4. Hammering of rock ledge.
5. Any damage to underground utilities, if any, unless marked.
6. Fill, unless specified.
7. Topsoil, unless specified.
8. Finish grading, unless specified.
9. Any water problems or containment.
10. Septic bank run over and above which is specified on drawing; additional cost for bank run at $35.00/yard for material and labor to spread.
11. Any surveying.
12. Any Engineering.

Again, thank you for choosing Tom Allen Excavating. Please feel free to contact us regarding this or any other matter. We welcome your call. Please contact us at 914-447-3143 or 845-265-5598.

Please sign both original copies of this proposal; a fully executed copy will be sent under separate cover for your files.

Very truly yours,

Tom Allen Excavating

Thomas E. Allen

Please Note: This proposal may be withdrawn if not accepted within 30 days.

**Acceptance of Proposal:**

The above prices, specifications and conditions are satisfactory and are hereby accepted. Tom Allen Excavating is hereby are authorized to do the work as specified. Payment will be as outlined above. Finance charges are assessed at a rate of 1.5% per month (annual percentage rate of 18%) on all balances over 30 days. Should the above contracted amount not be paid as per the payment schedule, a mechanics lien will be applied to the project and the purchaser shall be responsible for any and all collections including but not limited to attorney fees and court costs.

_____          _____

Tom Allen Excavating              Date          Hudson Way LLC              Date

Page 3 of 3

**EXHIBIT 4 – "House B Contract"**

**Tom Allen Excavating**
**345 Main Street**
**Nelsonville, NY 10516**
**845-265-5598 o**
**845-265-6087 f**

October 15, 2006

Hudson Way LLC
Route 301 & Hudson Way
Cold Spring, New York 10516

***Job:***    ***Proposal for House Site #2***
              ***Cold Spring, New York 10516***

Dear Sirs:

Thank you for considering Tom Allen Excavating for the above referenced location. We propose to furnish all labor, equipment, materials needed to complete the following work for the Hudson Way LLC Project as specified on the scope of work.

Work is limited to that which is specified only. It does not include or imply any other work unless specifically listed.

As per the drawings listed as Michelle Thorpe Holubar File #05-119 dated 9/14/06 by Badey & Watson.

1.    Cut Trees for Driveway & House Site.
2.    Remove all stumps from site.
3.    Cut in Driveway & Item #4 same.
4.    Dig for Foundation.
5.    Install Footing Drains & Tar Foundation
6.    Backfill Foundation.
7.    Dig Water & Electric lines.
8.    Clear Septic Area.
9.    Install Septic System as per plan.

**The above work will be performed at the contract price of    $35,500.00\***

Page 1 of 3

**Payment Schedule as follows:**

| | |
|---|---|
| Down Payment to start | $ 8,000.00 |
| Upon the completion of #1,2,3,4 | $ 6,500.00 |
| Upon the completion of #5,6,7 | $ 8,000.00 |
| Upon the completion of #8 | $ 8,000.00 |
| Upon the completion of #9 | $ 5,000.00 |

**Notes:**

In the event an item of work can not go as scheduled in the payment schedule, item of work may be moved to other installment groupings allowing for payments to be made based on work completed.

**\*Exclusions:**

1.  Permits, unless specified.
2.  Fines, unless due to Tom Allen Excavating negligence.
3.  Blasting.
4.  Hammering of rock ledge.
5.  Any damage to underground utilities, if any, unless marked.
6.  Fill, unless specified.
7.  Topsoil, unless specified.
8.  Finish grading, unless specified.
9.  Any water problems or containment.
10. Septic bank run over and above which is specified on drawing; additional cost for bank run at $35.00/yard for material and labor to spread.
11. Any surveying.
12. Any Engineering.

Again, thank you for choosing Tom Allen Excavating. Please feel free to contact us regarding this or any other matter.   We welcome your call. Please contact us at 914-447-3143 or 845-265-5598.

Please sign both original copies of this proposal; a fully executed copy will be sent under separate cover for your files.

Very truly yours,

Tom Allen Excavating

Thomas E. Allen

Please Note: This proposal may be withdrawn if not accepted within 30 days.

**<u>Acceptance of Proposal:</u>**
The above prices, specifications and conditions are satisfactory and are hereby accepted. Tom Allen Excavating is hereby are authorized to do the work as specified. Payment will be as outlined above. Finance charges are assessed at a rate of 1.5% per month (annual percentage rate of 18%) on all balances over 30 days. Should the above contracted amount not be paid as per the payment schedule, a mechanics lien will be applied to the project and the purchaser shall be responsible for any and all collections including but not limited to attorney fees and court costs.


_____      _____
Tom Allen Excavating          Date        Hudson Way LLC            Date


Page 3 of 3

**EXHIBIT 5 – House C Contract"**

**Tom Allen Excavating**
**345 Main Street**
**Nelsonville, NY 10516**
**845-265-5598 o**
**845-265-6087 f**

October 15, 2006

Hudson Way LLC
Route 301 & Hudson Way
Cold Spring, New York 10516

**Job:    Proposal for House _Site #3_**
         **Cold Spring, New York 10516**

Dear Sirs:

Thank you for considering Tom Allen Excavating for the above referenced location. We propose to furnish all labor, equipment, materials needed to complete the following work for the Hudson Way LLC Project as specified on the scope of work.

Work is limited to that which is specified only. It does not include or imply any other work unless specifically listed.

As per the drawings listed as Michelle Thorpe Holubar File #05-119 dated 9/14/06 by Badey & Watson.

1.    Cut Trees for Driveway & House Site.
2.    Remove all stumps from site.
3.    Cut in Driveway & Item #4 same.
4.    Dig for Foundation.
5.    Install Footing Drains & Tar Foundation
6.    Backfill Foundation.
7.    Dig Water & Electric lines.
8.    Clear Septic Area.
9.    Install Septic System as per plan.

**The above work will be performed at the contract price of    $33,500.00***

Page 1 of 3

**Payment Schedule as follows:**

| | |
|---|---|
| Down Payment to start | $ 8,000.00 |
| Upon the completion of #1,2,3,4 | $ 6,500.00 |
| Upon the completion of #5,6,7 | $ 8,000.00 |
| Upon the completion of #8 | $ 8,000.00 |
| Upon the completion of #9 | $ 5,000.00 |

**Notes:**

In the event an item of work can not go as scheduled in the payment schedule, item of work may be moved to other installment groupings allowing for payments to be made based on work completed.

**\*Exclusions:**

1. Permits, unless specified.
2. Fines, unless due to Tom Allen Excavating negligence.
3. Blasting.
4. Hammering of rock ledge.
5. Any damage to underground utilities, if any, unless marked.
6. Fill, unless specified.
7. Topsoil, unless specified.
8. Finish grading, unless specified.
9. Any water problems or containment.
10. Septic bank run over and above which is specified on drawing; additional cost for bank run at $35.00/yard for material and labor to spread.
11. Any surveying.
12. Any Engineering.

Again, thank you for choosing Tom Allen Excavating. Please feel free to contact us regarding this or any other matter. We welcome your call. Please contact us at 914-447-3143 or 845-265-5598.

Please sign both original copies of this proposal; a fully executed copy will be sent under separate cover for your files.

Very truly yours,

Tom Allen Excavating


Thomas E. Allen

Please Note: This proposal may be withdrawn if not accepted within 30 days.

2 of 3

**Acceptance of Proposal:**

The above prices, specifications and conditions are satisfactory and are hereby accepted. Tom Allen Excavating is hereby are authorized to do the work as specified. Payment will be as outlined above. Finance charges are assessed at a rate of 1.5% per month (annual percentage rate of 18%) on all balances over 30 days. Should the above contracted amount not be paid as per the payment schedule, a mechanics lien will be applied to the project and the purchaser shall be responsible for any and all collections including but not limited to attorney fees and court costs.

_____          _____          _____          _____
Tom Allen Excavating                Date             Hudson Way LLC                          Date

**EXHIBIT 6 – Proposed Amended Complaint of October 29, 2007**

Bjorn J. Holubar (BH-9691)
575 Madison Avenue, 10th Floor
New York, New York 10022
1-516-446-1546 direct phone
1-646-417-6017 direct fax
1-646-334-8312 phone
1-212-605-4955 fax
bholubaresq@optonline.net

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                  :

MICHELLE HOLUBAR, and          :
BJORN J. HOLUBAR,           :
                                  :

                      Plaintiffs,  :

     v.                        :    2007 CV 7185
                                  :    (S. Robinson/M. Fox)
TOM ALLEN, aka             :
TOMMY ALLEN, aka         :
THOMAS ALLEN, dba        :
TOM ALLEN EXCAVATING, and :
JOAN ALLEN,               :
                                  :
                    Defendants.  :
                                  :
------------------------------------------------------------X

## 2nd AMENDED VERIFIED COMPLAINT & JURY DEMAND

### Preliminary Statement

    Plaintiffs, Michelle Thorpe Holubar and Bjorn J. Holubar, bring this action to

remedy a pattern of behavior and/or conduct by Defendants, specifically including: Civil

RICO – mail & wire fraud; breach of contract law; violations of New York's Lien Law §

79-a & GBL § 771; conversion; fraud; and unjust enrichment.

## Jurisdiction & Venue

1.      This action arises under the 18 U.S.C. § 1341; 18 U.S.C. § 1343; 18 U.S.C. § 1961-1968 *et seq.* particularly and not limited to § 1962(c)

2.      This Court has jurisdiction of this action under 28 U.S.C. § 1331.

3.      Plaintiffs further invoke this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a) over any and all state law claims and against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case and controversy.

4.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) *et seq.*

## Parties

5.      Plaintiffs, Michelle Thorpe Holubar & Bjorn J. Holubar ("Holubars"), are citizens of the United States, with a place of residence in Putnam County, State of New York.

6.      Defendant Tom Allen aka Tommy Allen aka Thomas Allan, all dba Tom Allen Excavating, is a citizen of the United States, and was at all times relevant herein a resident of the Town of Philipstown, County of Putnam, State of New York.

7.      Defendant Joan Allen, upon information and belief is an owner, principle or investor in Tom Allen Excavating, infusing capital into the business and/or receiving compensation therefrom and dba Tom Allen Excavating.

8.      Defendants collectively are referred to as "Defendants" or "Allen".

2

## Facts

9.      Tom Allen solicited several interrelated projects from the Holubars.

10.     The projects consisted of the excavation and creation of a private driveway as well as the excavation of three (3) building sites and the three (3) related septic fields. **EXHIBIT 1** "Road Contract"; **EXHIBIT 2** "House A Contract"; **EXHIBIT 3** "House B Contract"; **EXHIBIT 4** "House C Contract".

11.     In furtherance of this solicitation, Allen represented that he had excavated and constructed such driveways, foundations and septic fields in the past.

12.     In or about November 2006, Mr. Allen mailed a copy of the proposed four (4) contracts to the Holubars.

13.     Thereafter, based on the four (4) mailed contracts and the handwritten notation thereupon, Allen entered into contractual relations with the Holubars for construction of a private driveway and other related work ("Project") in the town of Philipstown, County of Putnam, State of New York.

14.     The "House Contracts" and their deposits were requested to be entered into at the time of the "Road Contract," but were rejected until such time as the Road Contract was near completion.

15.     Mr. Allen requested a deposit before doing work.

16.     In January 2007, a publically traded stock owned by Holubar was sole by a stock broker in Arizona for a New York company listed on the NASDAQ from which funds were transferred from New Jersey and a check issued to defendants for a deposit amount of $20,160.

3

16a.    In January 2007, a deposit of $20,160 was remitted to Tom Allen by the Holubars.

17.    Allen represented the driveway would be completed by March 1, 2007.

18.    This representation was later found to be false.

19.    In or about February 2007, Mr. Allen represented via telephone to the Holubars and others that as set forth in his contract, several stages of the project were nearing completion.

20.    On or about February 16, 2007, Mr. Allen represented via telephone to Fishkill Town Judge Frank Cross, Esq., Philipstown Town Judge Steve Tomann, Esq., Michael Colamarino, Judy Colamarino, and the Holubars that the project would be completed or that at least the driveway would be passable by March 1, 2007.

21.    The Holubars, Colamarinos and their attorneys relied on the representations of Allen and concluded a real estate transaction.

22.    This transaction would not have been consummated if Mr. Allen would have told the truth regarding the completion of the project.

23.    In reliance of the telephonic representations of Mr. Allen, believed to be true, Allen was issued payment in the amount of $30,000 on March 1, 2007. (Later found to be an advance).

24.    Prior to March 1, Mr. Allen requested the entry of the "House Contracts" and payment of 1 of the 3 deposits, with the subsequent two (2) House Contract deposits being due in March and April. Mr. Allen was informed that the same would be provided when the Road Contract was advanced and the road passable.

4

25.    On March 1, 2007, the Project was neither passable nor completed as previously promised by Mr. Allen.

26.    Mr. Allen was requested to remedy and cure the breach.

27.    On April 1, 2007, the Project was neither passable nor completed.

28.    Mr. Allen was requested to remedy and cure the breach.

29.    In April, Mr. Allen undertook home improvements not set forth in the contract between the parties.

30.    These undertakings were not reduced to writing by Allen.

31.    These undertakings consisted of the construction of an approximately 200 foot long, 2-6 foot high stone retaining wall, including back filling the wall with dirt and top soil, and grading and york raking the back filling for grass seeding.

31a.    Mr. Allen failed to fully construct the wall.

31b.    Mr. Allen failed to fully backfill the wall.

32.    In furtherance of the construction of the stone wall, Mr. Allen was to transfer stones and rocks from an adjoining parcel of land.

32b.    Mr. Allen failed to transfer rocks from the adjoining parcel of land in a timely manner, whereby the adjoining landowner reconsidered and elected to keep such stones and rocks, thus requiring the Plaintiffs to purchase stones and rocks.

33.    Mr. Allen was paid for such services yet failed to complete any element of the above.[1]

---

[1] Mr. Allen was paid close to $8,000 on "non-contract" "home improvements" and then when the Holubars were placed on notice of Mr. Allen's breach of contract and refusal

5

34.     On May 1, 2007, the Project was neither passable nor complete.

35.     Mr. Allen was requested to remedy and cure the breach.

36.     Mr. Allen represented that the driveway would be completed by the June 6 NYS DOT permit expiration date.

37.     On June 1, 2007, the Project was neither passable nor completed.

38.     On June 6, 2007 the Project was neither passable nor completed.

39.     Mr. Allen refused to work further on the Project, stating he "underbid" the Project and that it required more money.

40.     Mr. Allen requested that he use the deposits for the House Contracts so he could apply those proceeds to the Road Contract's actual construction.

41.     Mr. Allen stated to Mr. Julius White and Bjorn J. Holubar that he needed the House Contract deposits as he ran out of money and was "counting on them to pay (his) bills".

42.     Mr. Allen refused to work further on the Project, stating that he "was not properly equipped with the manpower or equipment" to complete the Project.

43.     Mr. Allen was again put on notice of his breach.

44.     It was then discovered that without authority or consent, Mr. Allen removed natural resources from the Holubars' property.

45.     Real property sales have been lost on account of the project being incomplete and in-passable.

46.     In an attempt to again mitigate Allen's breach, bids from potential replacement excavators were solicited.

---

to cure the same in June, the last payment of $1,700 was stopped, notwithstanding Allen's refusal to even complete the "wall project".

47.    A replacement contractor has been retained in excess of the contract price agreed to by Allen.

48.    It was later discovered and confirmed that Mr. Allen failed to effect/was negligent in effecting what minimal work he did complete because he was not in compliance with the engineer's plans

48a.    The principle driveway Mr. Allen worked on is off center by close to twenty (20) feet, intruding on another northerly located parcel of property.

48b.    Mr. Allen's driveway's elevation was "well above the designated grade", requiring further topographic analysis and excavation.

49.    It was later discovered and confirmed that Mr. Allen failed to effect/was negligent in effecting what minimal work he did complete because as he was not in compliance with New York States DEC requirements for water control.

50.    It was later discovered and confirmed that Mr. Allen failed to effect/was negligent in effecting what minimal work he did complete because as he was not in compliance with New York States DEC requirements for erosion control.

51.    It was later discovered and confirmed that Mr. Allen failed to effect/was negligent in effecting what minimal work he did complete because as he was not in compliance with the pre-project element of confirming of the non-existence of underground electrical and utilities for the Project.

52.    It was later discovered and confirmed that Mr. Allen fraudulently induced the Holubars' contractual entrance as Mr. Allen had never before affected a driveway of this design or size.

7

53.     Additional actions have been undertaken in an attempt to further mitigate and/or address the damages caused by Allen, including: tree clearing; stump removal; raw and construction materials purchases; demands for refunds of the deposits that were made; demands for refunds of moneys paid pursuant to the contract for services not rendered/completed/or negligently performed; and demand for costs of property lot lines that must now be re-surveyed, adjusted, priced and marketed accordingly.

54.     The above actions, misrepresentations and omissions by Mr. Allen have all required expenditures of time, resources and money above and beyond the contract price in Mr. Allen's contract.

55.     Such actions have affected interstate commerce in financial areas (payments made to Allen), building materials (home construction), labor (replacement contractors) and are not limited thereto.

55a.     Defendants have engaged a past pattern of conduct using the rouse of an excavation company and misrepresentations of competencies, ability and past performance to induce through mail and wire communications remittance of payments for work and efforts never to be undertaken or completed by defendants.

### Causes of Action

### 1ˢᵗ CAUSE OF ACTION
### 18 U.S.C. § 1961-1968 *et seq* / 18 U.S.C. § 1341 / 18 U.S.C. § 1343

46.    The Holubars incorporate by reference the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

47    Beginning no later than November 2006 through and until June 2007 the defendants engaged in and devised a fraudulent scheme to secure and defraud the Holubars of monetary resources and abscond with the Holubars' natural resources.

48.    In furtherance of this fraudulent scheme the defendants and others engaged in the following an open ended pattern of racketeering activity:

### Mail Fraud, Past and Future

49.    Defendants did knowingly, willfully and intentionally fail to disclose the truth as set forth above and not limited thereto concerning the time of completion of the Project with the sole intent to defraud plaintiffs and others out of monetary proceeds.

50.    Defendants engaged in a pattern of fraudulently knowingly concealed the truth about what happened and matter's status to effect payment while seeking additional payments in the future.

51.    Defendants intended by their action and testimony to defraud the Plaintiffs, others similarly situated, and thus illegally profited from such fraudulent representations.

52.    In the course of executing the fraudulent scheme to defraud Plaintiffs defendants repeatedly effected communication of contracts and materials through the United States Postal Service to and from this district in violation of 18 U.S.C. § 1341 (mail fraud).

9

52a.    Defendants conduct above and below complained of is in violation of 18 U.S.C. § 1962(c) and not limited thereto.

Wire Fraud, Past and Future

53.    Defendants did knowingly, willfully and intentionally fail to disclose the truth as set forth above and not limited thereto concerning the time of completion of the Project with the sole intent to defraud plaintiffs and others out of monetary proceeds.

54.    Defendants engaged in a pattern of fraudulently concealing the truth about what happened and matter's status to effect payment.

55.    Defendants intended by their action and testimony to defraud the Plaintiffs, others similarly situated, and thus illegally profited from such fraudulent representations.

56.    In the course of executing the fraudulent scheme to defraud the Holubars defendants repeatedly effected and made telephone call using interstate wire facilities to and from this district in violation of 18 U.S.C. § 1343 (wire fraud).

56a.    Defendants conduct above and below complained of is in violation of 18 U.S.C. § 1962(c) and not limited thereto.

57.    *To wit* and not limited to the occasion referenced: on or about February 16, 2007, defendants represented *via* telephone to Fishkill Town Judge Frank Cross, Esq., Philipstown Town Judge Steve Tomann, Esq. Michael Colamarino, Judy Colamarino and the plaintiffs that the project would be completed or at least the driveway passable by March 1, 2007.

Scheme To Defraud In the Past, Present and Future

58.    Defendants did numerously proffer material false representations.

10

59.    That the defendant knew or believed to be false.

60.    Defendants did numerously omit material facts.

61.    Defendant made the material misrepresentation or omission with the intent to induce the Holubars to rely and remit payments otherwise not due for goods (never purchased), services (never rendered) and simply the theft of natural resources.

61a.    Defendants conduct above and below complained of is in violation of 18 U.S.C. § 1962(c) and not limited thereto.

62.    The Holubars relied on the misrepresentation and omissions of defendants.

63.    The Holubars have been injured as a result of such reliance.

Continued, OnGoing Promissory Fraud

64.    Defendants did numerously proffer material false representations of future performance that the defendant knew or believed to be false.

65.    Defendants knowingly promised future performance knowing that defendants did not have the proper equipment to effect the services contracted for.

66.    Defendants knowingly promised future performance of both the Road and House Contracts knowing that defendants did not have the proper man power to effect the services contracted for.

67.    Defendants had no intention of ever performing the future act, and proffered such false promise as the scheme and manner to accomplish an independent fraudulent schemes, *e.g.* payment of the project and the home improvement "wall construction".

68.    Defendant made the material misrepresentation or omission with the intent to induce the Holubars to rely and remit payments otherwise not due for goods (never purchased), services (never rendered) and simply the theft of natural resources.

68a.    Defendants conduct above and below complained of is in violation of 18 U.S.C. § 1962(c) and not limited thereto.

69.    The Holubars relied on the misrepresentation and omissions of defendants.

70.    The Holubars have been injured as a result of such reliance.

71.    Each of the aforesaid violations by the defendants constitutes an instance of "racketeering activity".

72.    The multiple acts of racketeering activity by the defendants and others were interrelated, part of a common and continuous pattern of fraudulent schemes to defraud and were perpetrated for the same or similar purpose, thus constituting a "pattern of racketeering activity".

72a.    Defendants conduct above and below complained of is in violation of 18 U.S.C. § 1962(c) and not limited thereto.

73.    As a direct and proximate result of the defendants' fraudulent conduct and schemes by engaging in a pattern of racketeering activity, the Holubars suffered and suffer economic loss.

74.    The Holubars have and continues to be injured by defendants' conduct, actions and omissions.

75.    Such injuries will continue until remedies are redressed by this Court.

## 2nd CAUSE OF ACTION
### New York -- Breach of Contracts

76.    The Holubars reallege paragraphs 1 through 75 as if fully stated herein.

77.     Defendants voluntarily entered into contractual relations with Plaintiffs.

78.     The Holubars had an express written contract providing for services to be rendered, compensation and terms of payment.

79.     Defendants breached that express written contract failing to perform services due, refusing to perform service paid for and refusing future performance.

80.     Defendants profited from such actions and omissions.

81.     Defendants have failed to perform in accordance with the terms of their contract.

82      Defendants are in breach of contract.

83.     The Holubars are and will continue to be injured as a result of Defendants' actions and omissions.

84.     The Holubars' injury will continue until remedy by this Court.

### 3rd CAUSE OF ACTION
New York – Violation of Lien Law § 79-a

85.     The Holubars reallege paragraphs 1 through 84 as if fully stated herein.

86.     Defendants voluntarily entered into contractual relations with Plaintiff.

87.     Defendants requested, in writing by USPO, a deposit of $20,160 before commencement of work.

88.     Defendants were paid a deposit by the Holubars $20,160.

89.     Pursuant to New York State Law, Lien Law § 79-a such advance deposit payments were and are to be held in trust until the contracted for projects completion.

90.     Defendants spend such trust deposits on personal expenditures.

91.     Defendants are in violation of Lien Law 79-a.

92.     Demand for the deposits return have been made by the Holubars.

13

93.    Defendants represented that the Holubars' deposit held in trust by defendants has been expended.

94.    Defendants are in violation of Lien Law 79-a.

95.    The Holubars are and will continue to be injured as a result of defendants' actions and omissions.

96.    The Holubars' injury will continue until remedy by this Court.

### 4th CAUSE OF ACTION
New York - Conversion

97.    The Holubars incorporate by reference the allegations set forth in Paragraphs 1 through 96 as if fully set forth herein.

98.    Defendants converted proceeds held in trust by them for personal gain without right or authority from the Holubars.

99.    Defendants failed to return the above proceeds after demand.

100.    The Holubars have and continue to be injured by defendants' conduct, actions and omissions.

101.    Such injuries will continue until remedies are redressed by this Court.

### 5th CAUSE OF ACTION
New York – Theft/Conversion

102.    The Holubars incorporate by reference the allegations set forth in Paragraphs 1 through 101 as if fully set forth herein.

103.    Defendants removed natural resources from the Holubars property without authority or consent.

104.    Defendants failed to return the above resources.

106.    Defendants failed to compensate the Holubars for said natural resources.

14

107. Defendants converted the Holubars' natural resources to personal use.

108. The Holubars have and continue to be injured by Defendants' conduct, actions and omissions.

109. Such injuries will continue until remedies are redressed by this Court.

## 5th CAUSE OF ACTION
### New York - Violation of General Business Law § 771

110. The Holubars incorporate by reference the allegations set forth in paragraphs 1 through 109 as if fully set forth herein.

111. Under the provisions of § 771 of the General Business Law of the State of New York, every home improvement contract must contain certain information and be in writing.

112. Defendants failed to provide an appropriate contract for the Project and the contract for work, labor and services done at the Holubars home omitting information such as the approximate dates or estimated dates when the work would begin or and be substantially complete and describing specifically the work to be performed, materials to be provided, and agreed upon consideration.

113. The Holubars therefore respectfully request that the Court impose a civil penalty in the amount of $100.00 against the defendants, severably, pursuant to § 773 Subsection 1 of the General Business Law.

114. The Holubars further seek penalties against the defendants severably pursuant to § 772 Subsection 1 of the General Business Law in the amount of $500.00 as a civil penalty, plus reasonable attorneys fees, based upon omissive, false or fraudulent written representations provided by the defendants to the Holubars.

115. The Holubars are and will continue to be injured as a result of defendants'

actions and omissions.

116.    The Holubars' injury will continue until remedy by this Court.

### 6th CAUSE OF ACTION
New York - Violation of General Business Law § 771

117.    The Holubars incorporate by reference the allegations set forth in paragraphs 1 through 116 as if fully set forth herein.

118.    Under the provisions of § 771 of the General Business Law of the State of New York, every home improvement contract must contain certain information and be in writing.

119.    Defendants failed to provide any contract for the "wall construction" as detailed in paragraphs 26 et seq detailing the contract for work, labor and services done at the Holubars home omitting information such as the approximate dates or estimated dates when the work would begin or and be substantially complete and describing specifically the work to be performed, materials to be provided, and agreed upon consideration.

120.    The Holubars therefore respectfully request that the Court impose a civil penalty in the amount of $100.00 against the defendants, severably, pursuant to § 773 Subsection 1 of the General Business Law.

121.    The Holubars further seek penalties against the defendants severably pursuant to § 772 Subsection 1 of the General Business Law in the amount of $500.00 as a civil penalty, plus reasonable attorneys fees, based upon omissive, false or fraudulent written representations provided by the defendants to the Holubars.

122.    The Holubars are and will continue to be injured as a result of defendants' actions and omissions.

123.    The Holubars' injury will continue until remedy by this Court.

## 7th CAUSES OF ACTION
### New York – Negligence, multiple counts

124.    The Holubars repeat and reallege the allegations contained in paragraphs 1 through 123 as if fully set forth herein.

125.    Defendants owed the Holubars the duties to perform and execute their obligations to the Holubars as contractually provided.

126.    Defendants breached their duties to the Holubars were negligent in the performance of their duties see paragraphs 38-42 and not limited thereto.

127.    As a result of defendants' breaches of their duties, the Holubars are and continue to be damaged and materially and irreparably injured.

128.    Defendants' actions were without concern of defendants' obligations and responsibilities to the Holubars.

129.    The Holubars are and continue to be injured as a result of defendants' actions and omissions.

130.    The Holubars' injury will continue until remedy by this Court.

## 8th CAUSE OF ACTION
### New York – Fraud

131.    The Holubars incorporates by reference the allegations set forth in paragraphs 1 through 130 as if fully set forth herein.

132.    Defendants did knowingly, willfully and intentionally fail to disclose the truth as set forth above.

133.    Defendants engaged in a pattern of fraudulently concealing the truth about what happened and the intention of performance for procurement of funds not otherwise attainable or due.

17

134.    Defendants intended by their action, conduct and testimony to defraud the Holubars and thus illegally profited from such fraudulent representations.

135.    Defendants intentionally made untrue representation about the ability to complete the Project.

136.    Defendants intentionally made untrue representation about the status of the Project.

137.    The untrue representation were believed by the Holubars and relied upon.

138    That as a direct and proximate result of defendants' fraudulent concealment and conduct, Plaintiffs have been injured both money and property.

139.    The Holubars have and continue to be injured by defendants' conduct, actions and omissions.

140.    Such injuries will continue until remedies are redressed by this Court.

### 9th CAUSE OF ACTION
### New York – Unjust Enrichment

141.    The Holubars repeat each and every allegation as set forth above, *et seq.*

142.    Defendant has been unjustly enriched through the receipt of payment without rendering any consideration therefore.

143.    Defendants' actions are at the sole expense of the Holubars.

144.    The Holubars are and will continue to be injured as a result of defendants' actions and omissions.

145.    The Holubars' injury will continue until remedy by this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, pray this Court render judgment on all causes of action against defendants jointly and severably and award Plaintiffs:

    A.    an amount to be determined, but believed in excess of $450,000.00;

    B.    an amount as provided for by 18 U.S.C. § 1961-1968 *et seq.*, trebled;

    C.    amounts provided for by New York General Business Law § 771;

    D.    amounts provided for by New York Lien Law § 79-a;

    E.    their reasonable costs and attorney fees, and

    E.    directing such other and further relief as the Court may deem just

and proper and or awardable.

## JURY TRIAL DEMANDED

In accordance with the provisions of the Fed.R.Civ.Pro., Plaintiffs hereby demand a trial by jury of all issues so triable.

## VERIFICATION

_____
Michelle Thorpe Holubar

    Before me, the undersigned authority, duly authorized to accept acknowledgments and oaths, personally appeared Michelle Thorpe Holubar who after being sworn, deposes and says that she has read the foregoing Verified Complaint affirms under penalty of perjury that the same is true and accurate except for those statements made under information and belief.
NOTARY:

Respectfully submitted,
Bjorn J. Holubar /s/

Dated: October 29, 2007
    New York, New York

_____
Bjorn J. Holubar (BH-9691)
575 Madison Avenue, 10th Floor
New York, New York 10022
1-516-446-1546 direct phone
1-646-417-6017 direct fax
1-646-334-8312 phone
1-212-605-4955 fax
bholubaresq@optonline.net

19

## TABLE OF EXHIBITS

EXHIBIT 1 – "Road Contract"

EXHIBIT 2 – "House A Contract"

EXHIBIT 3 – "House B Contract"

EXHIBIT 4 – House C Contract"

**EXHIBIT 1 – Road Contract**

*BK@ Clu*
*12/5 -12/10*

**Tom Allen Excavating**
**345 Main Street**
**Nelsonville, NY 10516**
**845-265-5598 o**
**845-265-6087 f**

October 15, 2006

Hudson Way LLC
Route 301 & Hudson Way
Cold Spring, New York 10516

*Job:*    **Proposal for work**
          **Cold Spring, New York 10516**

Dear Sirs:

Thank you for considering Tom Allen Excavating for the above referenced location. We propose to furnish all labor, equipment, materials needed to complete the following work for the Hudson Way LLC Project as specified on the scope of work.

Work is limited to that which is specified only. It does not include or imply any other work unless specifically listed.

As per the drawings listed as Michelle Thorpe Holubar File #05-119 dated 9/14/06 by Badey & Watson.

1.    ~~Cut Trees from Route 301 to culdesac approximately 25 Feet x 1000 Feet.~~
2.    Remove all stumps from road site.
3.    Install all Silt Fences.
4.    Bring road to rough grade
5.    Item #4 road.
6.    ~~Clear Trees~~ and stumps from drainage pond area.
7.    Dig out drain pond.
8.    Install nine (9) Catch Basins.
9.    Install Headwalls at Entrance.
10.   Install stone in all swells.
      (Driveway to Lot #4 included).

**The above work will be performed at the contract price of  $125,800.00***
Page 1 of 3

*less Gerison Tree Clear*
*Amt TBD*

**Payment Schedule as follows:**

| | |
|---|---|
| Down Payment to start | $25,160.00 |
| Upon the completion of #1,2,3 | $12,580.00 |
| Upon the completion of #4,5,6 | $18,870.00 |
| Upon the completion of #7 | $12,580.00 |
| Upon the completion of #8 | $25,160.00 |
| Upon the completion of #9 | $18,870.00 |
| Upon the completion of #10 | $12,580.00 |

**Notes:**

In the event an item of work can not go as scheduled in the payment schedule, item of work may be moved to other installment groupings allowing for payments to be made based on work completed.

**\*Exclusions:**

1.  Permits, unless specified.
2.  Fines, unless due to Tom Allen Excavating negligence.
3.  Blasting.
4.  Hammering of rock ledge.
5.  Any damage to underground utilities, if any, unless marked.
6.  Fill, unless specified.
7.  Topsoil, unless specified.
8.  Finish grading, unless specified.
9.  Any water problems or containment.
10. Septic bank run over and above which is specified on drawing; additional cost for bank run at $35.00/yard for material and labor to spread.
11. Fence around drain pond.
12. Any surveying.
13. Any Engineering.

Again, thank you for choosing Tom Allen Excavating. Please feel free to contact us regarding this or any other matter. We welcome your call. Please contact us at 914-447-3143 or 845-265-5598.

Please sign both original copies of this proposal; a fully executed copy will be sent under separate cover for your files.

Very truly yours,

Tom Allen Excavating

Thomas E. Allen

Please Note: This proposal may be withdrawn if not accepted within 30 days.

2 of 3

**Acceptance of Proposal:**

The above prices, specifications and conditions are satisfactory and are hereby accepted. Tom Allen Excavating is hereby are authorized to do the work as specified. Payment will be as outlined above. Finance charges are assessed at a rate of 1.5% per month (annual percentage rate of 18%) on all balances over 30 days. Should the above contracted amount not be paid as per the payment schedule, a mechanics lien will be applied to the project and the purchaser shall be responsible for any and all collections including but not limited to attorney fees and court costs.

_____     11-27-06       _____     11/27/06
Tom Allen Excavating            Date         Hudson Way LLC                Date
                                             Secretary

Page 3 of 3

EXHIBIT 2 – House A Contract

**Tom Allen Excavating**
**345 Main Street**
**Nelsonville, NY 10516**
**845-265-5598 o**
**845-265-6087 f**

October 15, 2006

Hudson Way LLC
Route 301 & Hudson Way
Cold Spring, New York 10516

**Job:**   ***Proposal for House Site #1***
***Cold Spring, New York 10516***

Dear Sirs:

Thank you for considering Tom Allen Excavating for the above referenced location. We propose to furnish all labor, equipment, materials needed to complete the following work for the Hudson Way LLC Project as specified on the scope of work.

Work is limited to that which is specified only. It does not include or imply any other work unless specifically listed.

As per the drawings listed as Michelle Thorpe Holubar File #05-119 dated 9/14/06 by Badey & Watson.

1.   Cut Trees for Driveway & House Site.
2.   Remove all stumps from site.
3.   Cut in Driveway & Item #4 same.
4.   Dig for Foundation.
5.   Install Footing Drains & Tar Foundation
6.   Backfill Foundation.
7.   Dig Water & Electric lines.
8.   Clear Septic Area.
9.   Install Septic System as per plan.

**The above work will be performed at the contract price of   $35,500.00\***

Page 1 of 3

## Payment Schedule as follows:

| | |
|---|---|
| Down Payment to start | $ 8,000.00 |
| Upon the completion of #1,2,3,4 | $ 6,500.00 |
| Upon the completion of #5,6,7 | $ 8,000.00 |
| Upon the completion of #8 | $ 8,000.00 |
| Upon the completion of #9 | $ 5,000.00 |

## Notes:

In the event an item of work can not go as scheduled in the payment schedule, item of work may be moved to other installment groupings allowing for payments to be made based on work completed.

## *Exclusions:

1. Permits, unless specified.
2. Fines, unless due to Tom Allen Excavating negligence.
3. Blasting.
4. Hammering of rock ledge.
5. Any damage to underground utilities, if any, unless marked.
6. Fill, unless specified.
7. Topsoil, unless specified.
8. Finish grading, unless specified.
9. Any water problems or containment.
10. Septic bank run over and above which is specified on drawing; additional cost for bank run at $35.00/yard for material and labor to spread.
11. Any surveying.
12. Any Engineering.

Again, thank you for choosing Tom Allen Excavating. Please feel free to contact us regarding this or any other matter. We welcome your call. Please contact us at 914-447-3143 or 845-265-5598.

Please sign both original copies of this proposal; a fully executed copy will be sent under separate cover for your files.

Very truly yours,

Tom Allen Excavating

Thomas E. Allen

Please Note: This proposal may be withdrawn if not accepted within 30 days.

2 of 3

Case 7:07-cv-07185-SCR-MDF     Document 14     Filed 10/29/2007     Page 84 of 93

**Acceptance of Proposal:**

The above prices, specifications and conditions are satisfactory and are hereby accepted. Tom Allen Excavating is hereby are authorized to do the work as specified. Payment will be as outlined above. Finance charges are assessed at a rate of 1.5% per month (annual percentage rate of 18%) on all balances over 30 days. Should the above contracted amount not be paid as per the payment schedule, a mechanics lien will be applied to the project and the purchaser shall be responsible for any and all collections including but not limited to attorney fees and court costs.

Tom Allen Excavating                    Date          Hudson Way LLC                    Date

Page 3 of 3

EXHIBIT 3 – House B Contract

**Tom Allen Excavating**
**345 Main Street**
**Nelsonville, NY 10516**
**845-265-5598 o**
**845-265-6087 f**

October 15, 2006

Hudson Way LLC
Route 301 & Hudson Way
Cold Spring, New York 10516

**Job:    *Proposal for House Site #3***
         ***Cold Spring, New York 10516***

Dear Sirs:

Thank you for considering Tom Allen Excavating for the above referenced location.  We propose to furnish all labor, equipment, materials needed to complete the following work for the Hudson Way LLC Project as specified on the scope of work.

Work is limited to that which is specified only. It does not include or imply any other work unless specifically listed.

As per the drawings listed as Michelle Thorpe Holubar File #05-119 dated 9/14/06 by Badey & Watson.

1.    Cut  Trees for Driveway & House Site.
2.    Remove all stumps from site.
3.    Cut in Driveway & Item #4 same.
4.    Dig for Foundation.
5.    Install Footing Drains & Tar Foundation
6.    Backfill Foundation.
7.    Dig Water & Electric lines.
8.    Clear Septic Area.
9.    Install Septic System as per plan.

**The above work will be performed at the contract price of   $33,500.00\***

Page 1 of 3

**Payment Schedule as follows:**

| | |
|---|---|
| Down Payment to start | $ 8,000.00 |
| Upon the completion of #1,2,3,4 | $ 6,500.00 |
| Upon the completion of #5,6,7 | $ 8,000.00 |
| Upon the completion of #8 | $ 8,000.00 |
| Upon the completion of #9 | $ 5,000.00 |

**Notes:**

In the event an item of work can not go as scheduled in the payment schedule, item of work may be moved to other installment groupings allowing for payments to be made based on work completed.

**\*Exclusions:**

1. Permits, unless specified.
2. Fines, unless due to Tom Allen Excavating negligence.
3. Blasting.
4. Hammering of rock ledge.
5. Any damage to underground utilities, if any, unless marked.
6. Fill, unless specified.
7. Topsoil, unless specified.
8. Finish grading, unless specified.
9. Any water problems or containment.
10. Septic bank run over and above which is specified on drawing; additional cost for bank run at $35.00/yard for material and labor to spread.
11. Any surveying.
12. Any Engineering.

Again, thank you for choosing Tom Allen Excavating. Please feel free to contact us regarding this or any other matter. We welcome your call. Please contact us at 914-447-3143 or 845-265-5598.

Please sign both original copies of this proposal; a fully executed copy will be sent under separate cover for your files.

Very truly yours,

Tom Allen Excavating

Thomas E. Allen

Please Note: This proposal may be withdrawn if not accepted within 30 days.

**Acceptance of Proposal:**

The above prices, specifications and conditions are satisfactory and are hereby accepted. Tom Allen Excavating is hereby are authorized to do the work as specified. Payment will be as outlined above. Finance charges are assessed at a rate of 1.5% per month (annual percentage rate of 18%) on all balances over 30 days. Should the above contracted amount not be paid as per the payment schedule, a mechanics lien will be applied to the project and the purchaser shall be responsible for any and all collections including but not limited to attorney fees and court costs.

_____     _____     _____     _____
Tom Allen Excavating                  Date      Hudson Way LLC           Date

Page 3 of 3

**EXHIBIT 4 – House C Contract**

**Tom Allen Excavating**
**345 Main Street**
**Nelsonville, NY 10516**
**845-265-5598 o**
**845-265-6087 f**

October 15, 2006

Hudson Way LLC
Route 301 & Hudson Way
Cold Spring, New York 10516

*Job:*    ***Proposal for House <u>Site #2</u>***
          ***Cold Spring, New York 10516***

Dear Sirs:

Thank you for considering Tom Allen Excavating for the above referenced location. We propose to furnish all labor, equipment, materials needed to complete the following work for the Hudson Way LLC Project as specified on the scope of work.

Work is limited to that which is specified only. It does not include or imply any other work unless specifically listed.

As per the drawings listed as Michelle Thorpe Holubar File #05-119 dated 9/14/06 by Badey & Watson.

1.    Cut Trees for Driveway & House Site.
2.    Remove all stumps from site.
3.    Cut in Driveway & Item #4 same.
4.    Dig for Foundation.
5.    Install Footing Drains & Tar Foundation
6.    Backfill Foundation.
7.    Dig Water & Electric lines.
8.    Clear Septic Area.
9.    Install Septic System as per plan.

**The above work will be performed at the contract price of    $35,500.00\***

Page 1 of 3

**Payment Schedule as follows:**

| | |
|---|---|
| Down Payment to start | $ 8,000.00 |
| Upon the completion of #1,2,3,4 | $ 6,500.00 |
| Upon the completion of #5,6,7 | $ 8,000.00 |
| Upon the completion of #8 | $ 8,000.00 |
| Upon the completion of #9 | $ 5,000.00 |

**Notes:**

In the event an item of work can not go as scheduled in the payment schedule, item of work may be moved to other installment groupings allowing for payments to be made based on work completed.

**\*Exclusions:**

1. Permits, unless specified.
2. Fines, unless due to Tom Allen Excavating negligence.
3. Blasting.
4. Hammering of rock ledge.
5. Any damage to underground utilities, if any, unless marked.
6. Fill, unless specified.
7. Topsoil, unless specified.
8. Finish grading, unless specified.
9. Any water problems or containment.
10. Septic bank run over and above which is specified on drawing; additional cost for bank run at $35.00/yard for material and labor to spread.
11. Any surveying.
12. Any Engineering.

Again, thank you for choosing Tom Allen Excavating. Please feel free to contact us regarding this or any other matter. We welcome your call. Please contact us at 914-447-3143 or 845-265-5598.

Please sign both original copies of this proposal; a fully executed copy will be sent under separate cover for your files.

Very truly yours,

Tom Allen Excavating

Thomas E. Allen

Please Note: This proposal may be withdrawn if not accepted within 30 days.

2 of 3

**Acceptance of Proposal:**

The above prices, specifications and conditions are satisfactory and are hereby accepted. Tom Allen Excavating is hereby are authorized to do the work as specified. Payment will be as outlined above. Finance charges are assessed at a rate of 1.5% per month (annual percentage rate of 18%) on all balances over 30 days. Should the above contracted amount not be paid as per the payment schedule, a mechanics lien will be applied to the project and the purchaser shall be responsible for any and all collections including but not limited to attorney fees and court costs.

_____        _____        _____        _____

Tom Allen Excavating                        Date             Hudson Way LLC                              Date

Page 3 of 3

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------X
                                          :
MICHELLE HOLUBAR, and                     :
BJORN J. HOLUBAR,                         :
                                          :
                          Plaintiffs,     :
        v.                                :       2007 CV 7185
                                          :       (S. Robinson/M. Fox)
TOM ALLEN, aka                            :
TOMMY ALLEN, aka                          :
THOMAS ALLEN, dba                         :
TOM ALLEN EXCAVATING, and                 :
JOAN ALLEN,                               :
                                          :
                          Defendants.     :
                                          :
----------------------------------------------------------X
```

## <u>CERTIFICATE OF SERVICE</u>

I Bjorn J. Holubar, Esq., an attorney admitted to practice in the Southern District of New York, do hereby t affirm under penalty of perjury that:

1-Plaintiffs' Opposition to defendants' Motion to Dismiss and Alternative Application for Leave to Amend, with appended exhibits, and

2-this Certificate of Service,

were served on counsel for defendants:

John H. Hersh, Esq.
First Federal Building, Suite 212
Peekskill, New York 10566

by ECF as promulgated by the Local Rules of this Court and by Federal Express on the 29th day of October 2007.

Bjorn J. Holubar /s/
_____
Bjorn J. Holubar, Esq.