Bjorn J. Holubar (BH-9691)
575 Madison Avenue, 10th Floor
New York, New York 10022
1-516-446-1546 direct phone
1-646-417-6017 direct fax
1-646-334-8312 phone
1-212-605-4955 fax
bholubaresq@optonline.net

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X



MICHELLE HOLUBAR, and　　　　　:
BJORN J. HOLUBAR,　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiffs,　:
　　　　　　　　　　　　　　　　　:　　2007 CV 7185
　　　　v.　　　　　　　　　　　　:　　(S. Robinson/M. Fox)
　　　　　　　　　　　　　　　　　:
TOM ALLEN, aka　　　　　　　　　:
　TOMMY ALLEN, aka　　　　　　　:
　THOMAS ALLEN, dba　　　　　　　:
　TOM ALLEN EXCAVATING, and　　:
JOAN ALLEN,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Defendants.　:
　　　　　　　　　　　　　　　　　:
------------------------------------------------------------X

## 3rd AMENDED VERIFIED COMPLAINT & JURY DEMAND

### Preliminary Statement

Plaintiffs, Michelle Thorpe Holubar and Bjorn J. Holubar, bring this action to remedy a pattern of behavior and/or conduct by Defendants, specifically including: Civil RICO – mail & wire fraud; breach of contract law; violations of New York's Lien Law § 79-a & GBL § 771; conversion; fraud; and unjust enrichment.

## Jurisdiction & Venue

1.    This action arises under the 18 U.S.C. § 1341; 18 U.S.C. § 1343; 18 U.S.C. § 1961, 1962(c) and (d).

2.    This Court has jurisdiction of this action under 28 U.S.C. § 1331.

3.    Plaintiffs further invoke this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a) over any and all state law claims and against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case and controversy.

4.    Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) *et seq.*

## Parties & Relationships

5.    Plaintiffs, Michelle Thorpe Holubar and Bjorn J. Holubar ("Holubars"), are citizens of the United States, with a place of residence in Putnam County, State of New York.  The Holubars are owners and/or dba as Hudson Way, LLC (which was never formed).

6.    Defendant Tom Allen, aka Tommy Allen and/or Thomas Allan, all doing business as the business enterprise of Tom Allen Excavating, is a citizen of the United States, and was at all times relevant herein a resident of the Town of Philipstown, County of Putnam, State of New York.

7.    Tom Allen is a co-owner, principal and/or investor in the business entity known as "Tom Allen Excavating", infusing capital into the business and/or receiving compensation herefrom.

8.    Deleted.

9.      Deleted.

10.     Upon information and belief Joan Allen is a co-owner, principal and/or investor in the business entity know as "Tom Allen Excavating", infusing capital into the business and/or receiving compensation therefrom and was at all times relevant herein a resident of the Town of Philipstown, County of Putnam, State of New York.

11.     Defendant Joan Allen does business as Tom Allen Excavating.

### Facts Common Defendants' Criminal Conduct and Schemes

12.     Defendant Joan Allen works out of the office occupied by Tom Allen Excavating.

13.     Defendant Joan Allen uses the telephones and fax machines in the office used and/or dedicated to Tom Allen Excavating.

14.     Upon information and belief Joan Allen received economic proceeds from Tom Allen Excavating

15.     Joan Allen loans Tom Allen Excavating money.

16.     Upon information and belief Joan Allen maintains the records of Tom Allen Excavating.

17.     The individual defendants operate individually and in a business capacity as business enterprise known as Tom Allen Excavating and have been doing so for no less than five (5) years preceding the below complained of actions and omissions.

18.     Defendants collectively are referred to as "Defendants" or "Allen".

19.     Plaintiffs are persons within the meaning of 18 U.S.C. §§ 1961(3), 1964(c).

20.    Each individual defendant listed in paragraphs 6 and 10 above is a person within the meaning of 18 U.S.C. §§ 1961(3); 1962(c) and (d).

21.    Each defendant listed above was an owner of, was employed by or was associated with an enterprise, that is, Tom Allen Excavating and its related corporate entities engaged in and the activities of which affected interstate commerce within the meaning of 18 U.S.C. § 1962(c) and (d) or is part of a group of individuals associated, in fact, engaged in activities which have and/or do effect interstate commerce.

22.    Tom Allen Excavating is a business entity registered to have done business in the County of Putnam at all time complained of herein.

23.    Tom Allen Excavating is an enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

24.    Defendants constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) in that they constitute a group of individuals associated in fact, engaged in activities which effect interstate commerce, and whose acts were the proximate cause of the damage to plaintiffs.

25.    Since about 2005, each defendant above listed agreed to conduct or participate, directly or indirectly, in the conduct of the above enterprise's affairs, and continues to do so and conspired so to do, through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), that is, mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. §§ 1343, 1962(c) and (d).

26.    Allen solicited several interrelated projects from the Holubars.

27.    The projects consisted of the excavation and creation of a private Road/driveway as well as the excavation of three (3) building sites and the three (3)

related septic fields. **EXHIBIT 1** "Road Contract" ("Project"); **EXHIBIT 2** "House A Contract"; **EXHIBIT 3** "House B Contract"; **EXHIBIT 4** "House C Contract". Exhibits fully incorporated herein by reference.

28.    In furtherance of this solicitation, Allen fraudulently misrepresented that he had excavated and constructed such Projects in the past with the intent to defraud Holubar.

29.    In furtherance of this solicitation, Allen fraudulently misrepresented that he had excavated home foundations in the past with the intent to defraud Holubar.

30.    In furtherance of this solicitation, Allen fraudulently misrepresented that he had excavated and constructed septic fields in the past with the intent to defraud Holubar.

31.    In late October and again in mid November 2006 (after Holubar requested a 2nd dispatch), Allen on two (2) separate occasions mailed copies of the proposed four (4) contracts to the Holubars.

32.    Thereafter, based on the four (4) mailed contracts and the handwritten notation thereupon, Allen entered into contractual relations with the Holubars for construction of a private Road/driveway and other related work related to the Project in the Town of Philipstown, County of Putnam, State of New York.

33.    The "House Contracts" and their deposits were requested to be entered into at the time of the "Road Contract," but were rejected until such time as the Road Contract was near completion.

34.    Allen requested a deposit before doing work.

35.    In January 2007, a publically traded stock owned by Holubar was sold by a stock broker in Arizona, for a New York company listed on the NASDAQ, from which funds were transferred from New York by wire to New Jersey by wire to Arizona and then by mail to the Holubars in New York, and there after a check issued to the defendants for a deposit amount of $20,160 in New York, all of which was effected by wire transfer or mail, save Allen's hand delivered check.

36.    In January 2007, a deposit of $20,160 was remitted to Allen by the Holubars from Bjorn J. Holubar.

37.    Allen represented the Project would be completed by March 1, 2007. This representation was later found to be false.

38.    No later than January 17 until no earlier than February 2, 2007 Allen (914-447-3143) and Holubar (516-446-1546) communicated at a minimum by wireless phones when Allen was in New York State and Holubar in Florida concerning the rate of progress and construction of the Project. **Exhibit 5 & 6.**

39.    Allen and Holubar communicated at a minimum by wireless phones when Mr. Allen was in North Carolina and Holubar in Florida concerning the rate of progress and construction of the Project. *Id at 5*

40.    Allen and Holubar communicated at a minimum by wireless phones when Mr. Allen was in South Carolina and Holubar in Florida concerning the rate of progress and construction of the Project. *Id at 5*

41.    Deleted.

42.     Allen and Holubar communicated at a minimum by wireless phones when Mr. Allen was in Florida and Holubar in New York concerning the rate of progress and construction of the Project. **Exhibit 6**

43.     Upon information and belief, in February 2007, Allen when in New York Tom Allen represented *via* telephone to Holubars, upon information and belief in Connecticut, and others that as set forth in Allen's contract, several stages of the project were nearing completion and that he needed money to purchase materials.

44.     On or about February 16, 2007, Mr. Allen represented *via* wireless telephone (his location unknown) to Fishkill Town Judge Frank Cross, Esq., Philipstown Town Judge Steve Tomann, Esq., Michael Colamarino, Judy Colamarino, and the Holubars that the project would be completed or that at least the Project would be passable by March 1, 2007.

45.     The Holubars, Colamarinos and their attorneys relied on the representations of Allen and concluded a real estate transaction to their detriment.

46.     This transaction would not have been consummated if Allen would have told the truth regarding the completion of the project.

47.     In reliance of the telephonic representations of Allen in furtherance of the enterprise of Tom Allen Excavating, believed to be true, Allen was issued payment in the amount of $30,000, from the Law firm of Pagones & Cross on behalf of Michelle Thorpe Holubar. (Later found to be an advance).

47a.     In or about late February 2007, Allen, when in New York represented *via* wireless phones telephone to Holubar in British Columbia, Canada that he needed money to purchase materials.

48.    Prior to March 1, Allen requested the entry of the "House Contracts" and payment of 1 of the 3 deposits, with the subsequent two (2) House Contract deposits being due in March and April. Allen was informed that the same would be provided when the Road Contract was advanced and the road passable.

49.    On March 1, 2007, the Project was neither passable nor completed as previously promised by Allen.

50.    Allen was requested to remedy and cure the breach.

51.    On April 1, 2007, the Project was neither passable nor completed.

52.    Allen was requested to remedy and cure the breach.

53.    In April, Allen undertook home improvements not set forth in the contract between the parties.

54.    These undertakings were not reduced to writing by Allen.

55.    These undertakings consisted of the construction of an approximately 200 foot long, 2-6 foot high stone retaining wall, including back filling the wall with dirt and top soil, and grading and York raking the back filling for grass seeding.

     a.    Allen failed to fully construct the wall.

     b.    Allen failed to fully backfill the wall.

56.    In furtherance of the construction of the stone wall, Allen was to transfer stones and rocks from an adjoining parcel of land.

56a.    Allen failed to transfer rocks from the adjoining parcel of land in a timely manner, whereby the adjoining landowner reconsidered and elected to keep such stones and rocks, thus requiring the Plaintiffs to purchase stones and rocks.

8

57.    Allen was paid for such services yet failed to complete any element of the above.[1]

58.    On May 1, 2007, the Project was neither passable nor complete.

59.    Allen was requested to remedy and cure the breach.

60.    Allen represented that the Project would be completed by the June 6 NYS DOT permit expiration date.

61.    On June 1, 2007, the Project was neither passable nor completed.

62.    On June 6, 2007 the Project was neither passable nor completed.

63.    Allen refused to work further on the Project, stating he "underbid" the Project and that it required more money.

64.    Allen requested that he use the deposits for the House Contracts so he could apply those proceeds to the Road Contract's actual construction.

65.    Tom Allen stated to Mr. Julius White and Bjorn J. Holubar that he needed advances on the House Contract deposits as he ran out of money from the road contract and was "counting on them to pay [his] bills and bulldozer loan payments".

66.    Allen refused to work further on the Project, stating that he "was not properly equipped with the manpower or equipment" to complete the Project.

67.    Allen was again put on notice of Allen's breach.

68.    It was then discovered that without authority or consent, Allen removed natural resources from the Holubars' property.

---

[1] Allen was paid $8,000 on "non-contract" "home improvements" and then when the Holubars were placed on notice of Allen's breach of contract and refusal to cure the same in June, the last payment of $1,700 was stopped, notwithstanding Allen's refusal to even complete the "wall project".

69.    Real property sales have been lost on account of the project being incomplete and in-passable, with interested parties from Connecticut, New Jersey, Long Island and New York City

70.    In an attempt to again mitigate Allen's breach, bids from potential replacement excavators were solicited.

71.    A replacement contractor has been retained in excess of the contract price agreed to by Allen.

72.    It was later discovered and confirmed that Allen failed to effect/was negligent in effecting what minimal work he did complete because he was not in compliance with the engineer's plans

a.    The principle Project Allen worked on is off center by close to twenty (20) feet, intruding on another northerly located parcel of property.

b.    Allen's Project's elevation was "well above the designated grade", requiring further topographic analysis and excavation.

73.    It was later discovered and confirmed that Allen failed to effect/was negligent in effecting what minimal work he did complete because as he was not in compliance with New York States DEC requirements for water control.

74.    It was later discovered and confirmed that Allen failed to effect/was negligent in effecting what minimal work he did complete because as he was not in compliance with New York States DEC requirements for erosion control.

75.    It was later discovered and confirmed that Allen failed to effect/was negligent in effecting what minimal work he did complete because as he was not in

compliance with the pre-project element of confirming of the non-existence of underground electrical and utilities for the Project.

76. It was later discovered and confirmed that Allen fraudulently induced the Holubars' contractual entrance as Allen had never before affected a Project of this design or size.

77. Additional actions have been undertaken in an attempt to further mitigate and/or address the damages caused by Allen, including: tree clearing; stump removal; raw and construction materials purchases; demands for refunds of the deposits that were made; demands for refunds of moneys paid pursuant to the contract for services not rendered/completed/or negligently performed; and demand for costs of property lot lines that must now be re-surveyed, adjusted, priced and marketed accordingly.

78. The above actions, misrepresentations and omissions by Allen have all required expenditures of time, resources and money above and beyond the contract price in Allen's contract.

79. Such actions have affected interstate commerce in financial areas (payments made to Allen, nonexistent construction loans, and/or home mortgage loans,), building materials (home construction), labor (replacement contractors) and are not limited thereto.

80. Defendants have engaged a past pattern of conduct using the rouse of an excavation company and misrepresentations of competencies, ability and past performance to induce through mail and wire communications remittance of payments for work and efforts never to be undertaken or completed by defendants.

**Causes of Action**

**1ˢᵗ CAUSE OF ACTION**
**18 U.S.C. § 1961-1968 / 18 U.S.C. § 1341 / 18 U.S.C. § 1343 / 18 U.S.C. § 1962(c)**

81.     The Holubars incorporate by reference the allegations set forth in paragraphs 1 through 80 as if fully set forth herein.

82.     Since in or about 2005, each defendant listed above agreed to conduct or participate, directly or indirectly, in the conduct of the enterprises affairs, and continues to do so and conspired so to do, through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), that is mail fraud in violation of 18 U.S.C. § 1341 and, but not limited to wire fraud in violation of 18 U.S.C. § 1343, 18 U.S.C. § 1962(c)(d).

83.     The plaintiff was injured by the defendants in business and property in an undetermined amount believed to exceed $450,000 by reasons of violations of 18 U.S.C. §§ 1962(c)(d) committed by the defendants within the meaning of 18 U.S.C § 1964(c).

84.     This pattern of racketeering activity began in or about October 2006 and the above criminal acts continue to June 2007 until the Holubars' terminated relations with Allen otherwise these acts would have continued into the indefinite future. 18 USC § 1961(5).

85.     The conduct of all defendants and the racketeering acts described above and incorporated herein by reference are related and they amount to or pose a threat of continued criminal activity. *Id*.

86.     Beginning no later than October 2006 through and until termination of defendants in June 2007 the defendants engaged in and devised a fraudulent scheme to

secure and defraud the Holubars of monetary resources and abscond with the Holubars' natural resources.

87.     Between October 2006 and June 2007 defendants' fraudulently induced a slow bleeding of Plaintiffs' liquid assets and theft of raw materials, that occurred for at least eight (8) months – and only 15% of the initial "road" project completed a rate that - but for termination - extrapolates into 48 months for the initial project alone.[2]  Thus, defendants' fraud, theft and *method operandi* would have continued well into the indefinite future.

88.     The defendants' scheme was not isolated to a singular "instance" or

limited in duration or geographic scope with effect upon interstate comments (see paragraph 35) as set forth in 18 U.S.C. § 1962(c).  Rather defendants' scheme encompassed a series of no less than five (5) related but separate and distinct actions and contracts all stemming from US Postal mailings that were maintained, schemes further advanced and continued through use of interstate wire communications, *i.e.* cell phones in 1/07-2/07 between Fl-NY; NY-FL; NC-FL; SC-FL; FL-NY as set forth in violation of 18 U.S.C. §§ 1962(c), 1961 (1) §§ 1341 (mail fraud) 1343 (wire fraud).

89.     But for termination, defendants' predicate acts and criminal activity would have extended indefinitely into the future.

90.     In furtherance of this fraudulent scheme the defendants and others engaged in the following an open ended pattern of racketeering activity and effected interstate commerce:

---

[2] Further, due to defendants' fraudulent representations as to their rate of progress compensation paid well in excess of services actually rendered; and defendants' continually requested deposits on the remaining 3 house contracts.

## Mail Fraud, Past and Future

90a.     The defendants did knowingly, willfully and intentionally fail to disclose the truth as set forth above and not limited thereto concerning the time of completion of the Project with the sole intent to defraud plaintiffs and others out of monetary proceeds.

90b.     The defendants engaged in a pattern of fraudulently knowingly concealed the truth about what happened and matter's status to effect payment while seeking additional payments in the future.

90c.     The defendants intended by their action and testimony to defraud the Plaintiffs, and others similarly situated, and thus illegally profited from such fraudulent representations.

91.     The defendants' fraudulent acts set forth herein constituted violations of various sections of the New York State Penal Law.

92.     In late October and again in mid November 2006 (after Holubar requested a 2nd dispatch), Allen on two (2) separate occasions mailed copies of the proposed four (4) contracts to the Holubars.

93.     The defendants because of the acts enumerated in the foregoing paragraphs violated the New York State Penal Law and are guilty of criminal facilitation, larceny and fraud and lien law trust violations, among other things.

94.     The defendants and other persons unknown acting at the direction of the defendants, for the purpose of executing the scheme to defraud and steal from the plaintiff and in furtherance of the criminal acts set forth herein, used and caused to be used the mail of the United States and/or other instrumentalities of interstate commerce such as the US Postal services.

14

95.     Such use of the United States mail or other instrumentalities of interstate commerce for the purposes of effectuating the scheme to defraud and steal from the plaintiff.

96.     In the course of executing the fraudulent scheme to defraud Plaintiffs defendants repeatedly effected communication of contracts and materials through the United States Postal Service to and from this district in violation of 18 U.S.C. § 1341 (mail fraud).

97.     Defendants conduct above and below complained of is in violation of 18 U.S.C. § 1962(c) and not limited thereto.

97a.     The Holubars relied on the misrepresentation and omissions of defendants.

97b.     The Holubars have been injured as a result of such reliance.

<u>Wire Fraud, Past and Future</u>

98.     Defendants did knowingly, willfully and intentionally fail to disclose the truth as set forth above and not limited thereto concerning the time of completion of the Project with the sole intent to defraud plaintiffs and others out of monetary proceeds.

99.     Defendants engaged in a pattern of fraudulently concealing the truth about what happened and matter's status to effect payment.

100.     Defendants intended by their action and testimony to defraud the Plaintiffs, others similarly situated, and thus illegally profited from such fraudulent representations.

101.     The defendants fraudulent acts set forth herein constituted violations of various sections of the New York State Penal Law.

102.    No later than January 17 until no earlier than February 2, 2007 Allen (914-447-3143) and Holubar (516-446-1546) communicated at a minimum by wireless phones when Allen was in New York State and Holubar in Florida concerning the rate of progress and construction of the Project.

103.    Allen and Holubar communicated at a minimum by wireless phones when Mr. Allen was in North Carolina and Holubar in Florida concerning the rate of progress and construction of the Project.

104.    Allen and Holubar communicated at a minimum by wireless phones when Mr. Allen was in South Carolina and Holubar in Florida concerning the rate of progress and construction of the Project.

105.    Deleted.

106.    Allen and Holubar communicated at a minimum by wireless phones when Mr. Allen was in Florida and Holubar in New York concerning the rate of progress and construction of the Project.

107.    Upon information and belief, in February 2007, Allen when in New York Tom Allen represented *via* telephone to Holubars, upon information and belief in Connecticut, and others that as set forth in Allen's contract, several stages of the project were nearing completion and that he needed money to purchase materials.

108.    On or about February 16, 2007, Mr. Allen represented *via* wireless telephone (his location unknown) to Fishkill Town Judge Frank Cross, Esq., Philipstown Town Judge Steve Tomann, Esq., Michael Colamarino, Judy Colamarino, and the Holubars that the project would be completed or that at least the Project would be passable by March 1, 2007.

109.    In reliance of the telephonic representations of Allen in furtherance of the enterprise of Tom Allen Excavating, believed to be true, Allen was issued payment in the amount of $30,000, from the Law firm of Pagones & Cross on behalf of Michelle Thorpe Holubar. (Later found to be an advance).

110.    The defendants because of the acts enumerated in the foregoing paragraphs violated the New York State Penal Law and are guilty of criminal facilitation, larceny and fraud and lien law trust violations, among other things.

111.    The defendants and other persons unknown acting at the direction of the defendants, for the purpose of executing the scheme to defraud and steal from the plaintiff and in furtherance of the criminal acts set forth herein, used and caused to be used the mail of the United States and/or other instrumentalities of interstate commerce such as interstate wire services.

112.    Such use of the interstate wire facilities or other instrumentalities of interstate commerce for the purposes of effectuating the scheme to defraud and steal from the plaintiff.

113.    In the course of executing the fraudulent scheme to defraud the Holubars defendants repeatedly effected and made telephone call using interstate wire facilities to and from this district in violation of 18 U.S.C. § 1343 (wire fraud).

114.    Defendants conduct above and below complained of is in violation of 18 U.S.C. § 1962(c) and not limited thereto.

114a.    The Holubars relied on the misrepresentation and omissions of defendants.

114b.    The Holubars have been injured as a result of such reliance.

17

## Scheme To Defraud In the Past, Present and Future

115.    Defendants did numerously proffer materially false representations.

116    The defendants and other persons unknown acting at the direction of the defendants, for the purpose of executing the scheme to defraud and steal from the plaintiff and in furtherance of the criminal acts set forth herein, used and caused to be used the mail of the United States and/or other instrumentalities of interstate commerce such as telecommunications devices.

117    Such use of the United States mail or other instrumentalities of interstate commerce for the purposes of effectuating the scheme to defraud and steal from the plaintiff.

118.    Using such instrumentalities defendants did numerously omit material facts and make fraudulent statements in the further inducement of the Holubars.

119.    Defendant made the material misrepresentation or omission with the intent to induce the Holubars to rely and remit payments otherwise not due for goods (never purchased), services (never rendered) and simply the theft of natural resources.

120.    Defendants conduct above and below complained of is in violation of 18 U.S.C. § 1962(c) and not limited thereto.

121.    The Holubars relied on the misrepresentation and omissions of defendants.

122.    The Holubars have been injured as a result of such reliance.

## Continued, OnGoing Promissory Fraud

123.    Defendants did numerously proffer material false representations of future performance that the defendant knew or believed to be false.

124    The defendants and other persons unknown acting at the direction of the

defendants, for the purpose of executing the scheme to defraud and steal from the plaintiff and in furtherance of the criminal acts set forth herein, used and caused to be used the mail of the United States and/or other instrumentalities of interstate commerce such as telecommunications devices.

125.    Such use of the United States mail or other instrumentalities of interstate commerce for the purposes of effectuating the scheme to defraud and steal from the plaintiff.

126.    Using such instrumentalities, defendants knowingly promised future performance knowing that defendants did not have the proper equipment to effect the services contracted for.

127.    Defendants knowingly promised future performance of both the Road and House Contracts knowing that defendants did not have the proper man power to effect the services contracted for.

128.    Defendants had no intention of ever performing the future act, and proffered such false promise as the scheme and manner to accomplish an independent fraudulent schemes, *e.g.* payment of the project and the home improvement "wall construction".

129.    Defendant made the material misrepresentation or omission with the intent to induce the Holubars to rely and remit payments otherwise not due for goods (never purchased), services (never rendered) and simply the theft of natural resources.

130.    Defendants conduct above and below complained of is in violation of 18 U.S.C. § 1962(c) and not limited thereto.

131.    The Holubars relied on the misrepresentation and omissions of defendants.

132.    The Holubars have been injured as a result of such reliance.

133.    Each of the aforesaid violations by the defendants constitutes an instance of "racketeering activity".

134.    The multiple acts of racketeering activity by the defendants and others were interrelated, part of a common and continuous pattern of fraudulent schemes to defraud and were perpetrated for the same or similar purpose, thus constituting a "pattern of racketeering activity".

135.    Defendants conduct above and below complained of is in violation of 18 U.S.C. § 1962(c) and not limited thereto.

136.    As a direct and proximate result of the defendants' fraudulent conduct and schemes by engaging in a pattern of racketeering activity, the Holubars suffered and suffer economic loss.

137.    The Holubars have and continues to be injured by defendants' conduct, actions and omissions.

138.    Such injuries will continue until remedies are redressed by this Court.

### 2nd CAUSE OF ACTION
### New York -- Breach of Contracts

139.    The Holubars reallege paragraphs 1 through 139 as if fully stated herein.

140.    Defendants voluntarily entered into contractual relations with Plaintiffs.

141.    The Holubars had an express written contract providing for services to be rendered, compensation and terms of payment.

142.    Defendants breached that express written contract failing to perform services due, refusing to perform service paid for and refusing future performance.

143.    Defendants profited from such actions and omissions.

144.    Defendants have failed to perform in accordance with the terms of their contract.

145    Defendants are in breach of contract.

146.    The Holubars are and will continue to be injured as a result of Defendants' actions and omissions.

147.    The Holubars' injury will continue until remedy by this Court.

### 3rd CAUSE OF ACTION
### New York -- Violation of Lien Law § 79-a

148.    The Holubars reallege paragraphs 1 through 148 as if fully stated herein.

149.    Defendants voluntarily entered into contractual relations with Plaintiff.

150.    Defendants requested, in writing by USPO, a deposit of $20,160 before commencement of work.

151.    Defendants were paid a deposit by the Holubars $20,160.

152.    Pursuant to New York State Law, Lien Law § 79-a such advance deposit payments were and are to be held in trust until the contracted for projects completion.

153.    Defendants spend such trust deposits on personal expenditures.

154.    Defendants are in violation of Lien Law 79-a.

155.    Demand for the deposits return have been made by the Holubars.

156.    Defendants represented that the Holubars' deposit held in trust by defendants has been expended.

157.    Defendants are in violation of Lien Law 79-a.

158.    The Holubars are and will continue to be injured as a result of defendants' actions and omissions.

159.    The Holubars' injury will continue until remedy by this Court.

## 4th CAUSE OF ACTION
### New York - Conversion

160.    The Holubars incorporate by reference the allegations set forth in Paragraphs 1 through 160 as if fully set forth herein.

161.    Defendants converted proceeds held in trust by them for personal gain without right or authority from the Holubars.

162.    Defendants failed to return the above proceeds after demand.

163.    The Holubars have and continue to be injured by defendants' conduct, actions and omissions.

164.    Such injuries will continue until remedies are redressed by this Court.

## 5th CAUSE OF ACTION
### New York – Theft/Conversion

165.    The Holubars incorporate by reference the allegations set forth in Paragraphs 1 through 164 as if fully set forth herein.

166.    Defendants removed natural resources from the Holubars property without authority or consent.

167.    Defendants failed to return the above resources.

168.    Defendants failed to compensate the Holubars for said natural resources.

169.    Defendants converted the Holubars' natural resources to personal use.

170.    The Holubars have and continue to be injured by Defendants' conduct, actions and omissions.

171.    Such injuries will continue until remedies are redressed by this Court.

## 5th CAUSE OF ACTION
### New York - Violation of General Business Law § 771

172.    The Holubars incorporate by reference the allegations set forth in paragraphs 1 through 172 as if fully set forth herein.

173.    Under the provisions of § 771 of the General Business Law of the State of New York, every home improvement contract must contain certain information and be in writing.

174.    Defendants failed to provide an appropriate contract for the Project and the contract for work, labor and services done at the Holubars home omitting information such as the approximate dates or estimated dates when the work would begin or and be substantially complete and describing specifically the work to be performed, materials to be provided, and agreed upon consideration.

175.    The Holubars therefore respectfully request that the Court impose a civil penalty in the amount of $100.00 against the defendants, severably, pursuant to § 773 Subsection 1 of the General Business Law.

176.    The Holubars further seek penalties against the defendants severably pursuant to § 772 Subsection 1 of the General Business Law in the amount of $500.00 as a civil penalty, plus reasonable attorneys fees, based upon omissive, false or fraudulent written representations provided by the defendants to the Holubars.

177.    The Holubars are and will continue to be injured as a result of defendants' actions and omissions.

178.    The Holubars' injury will continue until remedy by this Court.

## 6th CAUSE OF ACTION
### New York - Violation of General Business Law § 771

179.    The Holubars incorporate by reference the allegations set forth in paragraphs 1 through 116 as if fully set forth herein.

180.    Under the provisions of § 771 of the General Business Law of the State of New York, every home improvement contract must contain certain information and be in writing.

181.    Defendants failed to provide any contract for the "wall construction" as detailed in paragraphs 26 et seq detailing the contract for work, labor and services done at the Holubars home omitting information such as the approximate dates or estimated dates when the work would begin or and be substantially complete and describing specifically the work to be performed, materials to be provided, and agreed upon consideration.

182.    The Holubars therefore respectfully request that the Court impose a civil penalty in the amount of $100.00 against the defendants, severably, pursuant to § 773 Subsection 1 of the General Business Law.

183.    The Holubars further seek penalties against the defendants severably pursuant to § 772 Subsection 1 of the General Business Law in the amount of $500.00 as a civil penalty, plus reasonable attorneys fees, based upon omissive, false or fraudulent written representations provided by the defendants to the Holubars.

184.    The Holubars are and will continue to be injured as a result of defendants' actions and omissions.

185.    The Holubars' injury will continue until remedy by this Court.

## 7th CAUSES OF ACTION
### New York – Negligence, multiple counts

186.    The Holubars repeat and reallege the allegations contained in paragraphs 1 through 123 as if fully set forth herein.

24

187.    Defendants owed the Holubars the duties to perform and execute their obligations to the Holubars as contractually provided.

189.    Defendants breached their duties to the Holubars were negligent in the performance of their duties see paragraphs 55, 72-77 and not limited thereto.

190.    As a result of defendants' breaches of their duties, the Holubars are and continue to be damaged and materially and irreparably injured.

191.    Defendants' actions were without concern of defendants' obligations and responsibilities to the Holubars.

192.    The Holubars are and continue to be injured as a result of defendants' actions and omissions.

193.    The Holubars' injury will continue until remedy by this Court.

### 8th CAUSE OF ACTION
#### New York – Fraud

194.    The Holubars incorporates by reference the allegations set forth in paragraphs 1 through 130 as if fully set forth herein.

195.    Defendants did knowingly, willfully and intentionally fail to disclose the truth as set forth above.

196.    Defendants engaged in a pattern of fraudulently concealing the truth about what happened and the intention of performance for procurement of funds not otherwise attainable or due.

197.    Defendants intended by their action, conduct and testimony to defraud the Holubars and thus illegally profited from such fraudulent representations.

198.    Defendants intentionally made untrue representation about the ability to complete the Project.

199.    Defendants intentionally made untrue representation about the status of the Project.

200.    The untrue representation were believed by the Holubars and relied upon.

201.    That as a direct and proximate result of defendants' fraudulent concealment and conduct, Plaintiffs have been injured both money and property.

202.    The Holubars have and continue to be injured by defendants' conduct, actions and omissions.

203.    Such injuries will continue until remedies are redressed by this Court.

## 9th CAUSE OF ACTION
### New York – Unjust Enrichment

204.    The Holubars repeat each and every allegation as set forth above, *et seq*.

205.    Defendant has been unjustly enriched through the receipt of payment without rendering any consideration therefore.

206.    Defendants' actions are at the sole expense of the Holubars.

207.    The Holubars are and will continue to be injured as a result of defendants' actions and omissions.

208.    The Holubars' injury will continue until remedy by this Court.

## 10th CAUSE OF ACTION

### 18 U.S.C. §§ 1961-1968 / 18 U.S.C. § 1341 / 18 U.S.C. § 1343 / 18 U.S.C. § 1962(d)

209.    The Holubars incorporate by reference the allegations set forth in paragraphs 1 through 138 as if fully set forth herein.

210.    Defendants conspired to violate 18 USC § 1961, therein § 1962(c) and thus violate § 1962(d).

211.    Defendants committed the overt acts listed in aforementioned paragraphs 6-138 in furtherance of the conspiracy.

212.    Defendant has been unjustly enriched through the receipt of payment without rendering any consideration therefore.

213.    Defendants' actions are at the sole expense of the Holubars.

214.    The Holubars are and will continue to be injured as a result of defendants' actions and omissions.

215.    The Holubars' injury will continue until remedy by this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, pray this Court render judgment on all causes of action against defendants jointly and severably and award Plaintiffs:

A.     an amount to be determined, but believed in excess of $450,000.00;

B.     an amount as provided for by 18 U.S.C. § 1964(c), trebled;

C.     amounts provided for by New York General Business Law § 771;

D.     amounts provided for by New York Lien Law § 79-a;

E.     their reasonable costs and attorney fees provided for by 18 U.S.C. § 1964(c), and

E.     directing such other and further relief as the Court may deem just and proper and or awardable.

## JURY TRIAL DEMANDED

In accordance with the provisions of the Fed.R.Civ.Pro., Plaintiffs hereby demand a trial by jury of all issues so triable.

Respectfully submitted,
Bjorn J. Holubar /s/

Dated: November 30, 2007
    New York, New York

Bjorn J. Holubar (BH 9691)
575 Madison Avenue, 10th Floor
New York, New York 10022
1-516-446-1546 direct phone
1-646-417-6017 direct fax
1-646-334-8312 phone
1-212-605-4955 fax
bholubaresq@optonline.net

## VERIFICATION

STATE OF NEW YORK    )
COUNTY OF ~~NEW YORK~~ )ss.:
          *Putnam*

    Michelle Thorpe Holubar, being duly sworn, deposes and says:

    I am a Plaintiff in the within action. I have read the foregoing Verified Complaint, know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.

                              Michelle Thorpe Holubar

Sworn to before me this
_30_ day of November, 2007

TINA M. MERANDO
NOTARY PUBLIC, STATE OF NEW YORK
REG 01ME5079624
QUALIFIED IN PUTNAM COUNTY
COM EXPIRES JUNE 9 _2011_

## <u>TABLE OF EXHIBITS</u>

EXHIBIT 1 – "Road Contract"
EXHIBIT 2 – "House A Contract"
EXHIBIT 3 – "House B Contract"
EXHIBIT 4 – House C Contract"
EXHIBIT 5 – January 2007 Phone Record Excerpt
EXHIBIT 6 – February 2007 Phone Record Excerpt

**EXHIBIT 1 – "Road Contract"**

*AK⊘ Clin*
*12/5 - 12/16*

**Tom Allen Excavating**
**345 Main Street**
**Nelsonville, NY 10516**
**845-265-5598 o**
**845-265-6087 f**

October 15, 2006

Hudson Way LLC
Route 301 & Hudson Way
Cold Spring, New York 10516

*Job:*    ***Proposal for work***
         ***Cold Spring, New York 10516***

Dear Sirs:

Thank you for considering Tom Allen Excavating for the above referenced location.  We propose to furnish all labor, equipment, materials needed to complete the following work for the Hudson Way LLC Project as specified on the scope of work.

Work is limited to that which is specified only. It does not include or imply any other work unless specifically listed.

As per the drawings listed as Michelle Thorpe Holubar File  #05-119 dated 9/14/06 by Badey & Watson.

1.    ~~Cut  Trees from Route 301 to culdesac approximately 25 Feet x 1000 Feet~~
2.    Remove all stumps from road site.
3.    Install all Silt Fences.
4.    Bring road to rough grade
5.    Item #4 road.
6.    ~~Clear Trees~~ and stumps from drainage pond area.
7.    Dig out drain pond.
8.    Install nine (9) Catch Basins.
9.    Install Headwalls at Entrance.
10.   Install stone in all swells.
       (Driveway to Lot #4 included).

The above work will be performed at the contract price of   $125,800.00*

Page 1 of 3

*less Green Tree Clew*
*Amt TBD*

**Payment Schedule as follows:**

| | |
|---|---|
| Down Payment to start | $25,160.00 |
| Upon the completion of #1,2,3 | $12,580.00 |
| Upon the completion of #4,5,6 | $18,870.00 |
| Upon the completion of #7 | $12,580.00 |
| Upon the completion of #8 | $25,160.00 |
| Upon the completion of #9 | $18,870.00 |
| Upon the completion of #10 | $12,580.00 |

**Notes:**

In the event an item of work can not go as scheduled in the payment schedule, item of work may be moved to other installment groupings allowing for payments to be made based on work completed.

**\*Exclusions:**

1. Permits, unless specified.
2. Fines, unless due to Tom Allen Excavating negligence.
3. Blasting.
4. Hammering of rock ledge.
5. Any damage to underground utilities, if any, unless marked.
6. Fill, unless specified.
7. Topsoil, unless specified.
8. Finish grading, unless specified.
9. Any water problems or containment.
10. Septic bank run over and above which is specified on drawing; additional cost for bank run at $35.00/yard for material and labor to spread.
11. Fence around drain pond.
12. Any surveying.
13. Any Engineering.

Again, thank you for choosing Tom Allen Excavating. Please feel free to contact us regarding this or any other matter. We welcome your call. Please contact us at 914-447-3143 or 845-265-5598.

Please sign both original copies of this proposal; a fully executed copy will be sent under separate cover for your files.

Very truly yours,

Tom Allen Excavating

Thomas E. Allen

Please Note: This proposal may be withdrawn if not accepted within 30 days.

2 of 3

**<u>Acceptance of Proposal:</u>**

The above prices, specifications and conditions are satisfactory and are hereby accepted. Tom Allen Excavating is hereby are authorized to do the work as specified. Payment will be as outlined above. Finance charges are assessed at a rate of 1.5% per month (annual percentage rate of 18%) on all balances over 30 days. Should the above contracted amount not be paid as per the payment schedule, a mechanics lien will be applied to the project and the purchaser shall be responsible for any and all collections including but not limited to attorney fees and court costs.

_____     11-27-06          _____     11/27/06
Tom Allen Excavating          Date              Hudson Way LLC               Date

Page 3 of 3

**EXHIBIT 2 – "House A Contract"**

**Tom Allen Excavating**
**345 Main Street**
**Nelsonville, NY 10516**
**845-265-5598 o**
**845-265-6087 f**

October 15, 2006

Hudson Way LLC
Route 301 & Hudson Way
Cold Spring, New York 10516

*Job:*    ***Proposal for House <u>Site #1</u>***
        ***Cold Spring, New York 10516***

Dear Sirs:

Thank you for considering Tom Allen Excavating for the above referenced location. We propose to furnish all labor, equipment, materials needed to complete the following work for the Hudson Way LLC Project as specified on the scope of work.

Work is limited to that which is specified only. It does not include or imply any other work unless specifically listed.

As per the drawings listed as Michelle Thorpe Holubar File #05-119 dated 9/14/06 by Badey & Watson.

1.    Cut  Trees for Driveway & House Site.
2.    Remove all stumps from site.
3.    Cut in Driveway & Item #4 same.
4.    Dig for Foundation.
5.    Install Footing Drains & Tar Foundation
6.    Backfill Foundation.
7.    Dig Water & Electric lines.
8.    Clear Septic Area.
9.    Install Septic System as per plan.

**The above work will be performed at the contract price of   $35,500.00\***

Page 1 of 3

**Payment Schedule as follows:**

| | |
|---|---|
| Down Payment to start | $ 8,000.00 |
| Upon the completion of #1,2,3,4 | $ 6,500.00 |
| Upon the completion of #5,6,7 | $ 8,000.00 |
| Upon the completion of #8 | $ 8,000.00 |
| Upon the completion of #9 | $ 5,000.00 |

**Notes:**

In the event an item of work can not go as scheduled in the payment schedule, item of work may be moved to other installment groupings allowing for payments to be made based on work completed.

**\*Exclusions:**

1. Permits, unless specified.
2. Fines, unless due to Tom Allen Excavating negligence.
3. Blasting.
4. Hammering of rock ledge.
5. Any damage to underground utilities, if any, unless marked.
6. Fill, unless specified.
7. Topsoil, unless specified.
8. Finish grading, unless specified.
9. Any water problems or containment.
10. Septic bank run over and above which is specified on drawing; additional cost for bank run at $35.00/yard for material and labor to spread.
11. Any surveying.
12. Any Engineering.

Again, thank you for choosing Tom Allen Excavating. Please feel free to contact us regarding this or any other matter. We welcome your call. Please contact us at 914-447-3143 or 845-265-5598.

Please sign both original copies of this proposal; a fully executed copy will be sent under separate cover for your files.

Very truly yours,

Tom Allen Excavating


Thomas E. Allen

Please Note: This proposal may be withdrawn if not accepted within 30 days.

2 of 3

**Acceptance of Proposal:**

The above prices, specifications and conditions are satisfactory and are hereby accepted. Tom Allen Excavating is hereby are authorized to do the work as specified. Payment will be as outlined above. Finance charges are assessed at a rate of 1.5% per month (annual percentage rate of 18%) on all balances over 30 days. Should the above contracted amount not be paid as per the payment schedule, a mechanics lien will be applied to the project and the purchaser shall be responsible for any and all collections including but not limited to attorney fees and court costs.

Tom Allen Excavating                    Date          Hudson Way LLC               Date

Page 3 of 3