UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                          :
MICHELLE HOLUBAR and                        :
BJORN J. HOLUBAR,                              :
                          Plaintiffs,          :
                                                          :
          -against-                                  :
                                                          :     **REPORT & RECOMMENDATION**
TOM ALLEN aka                                   :     07 Civ. 7185 (SCR)(MDF)
TOMMY ALLEN aka                             :
THOMAS ALLEN dba                            :
TOM ALLEN EXCAVATING and           :
JOAN ALLEN,                                       :
                                                          :
                          Defendants.       :
                                                          :
-------------------------------------------------------------x

TO: THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.

        Plaintiffs *pro se* Michelle and Bjorn Holubar bring this action against Defendants Tom

Allen (aka Tommy Allen, aka Thomas Allen, dba Tom Allen Excavating) and Joan Allen,

asserting civil RICO claims pursuant to 18 U.S.C. § 1962 based on allegations of mail fraud and

wire fraud, as well as several state law claims.  Currently pending before the Court is

Defendants' motion to dismiss Plaintiffs' Third Amended Complaint pursuant Fed. R. Civ. P.

12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim (Doc. #'s

19-22).[1]  For the reasons that follow, I respectfully recommend that your Honor grant

Defendants' motion.

## <u>BACKGROUND</u>

---

[1] While Defendants move to dismiss under both Rule 12(b)(1) and Rule 12(b)(6), the basis for their
Rule 12(b)(1) motion is Plaintiffs' standing under RICO.  However, "'RICO standing'. . . is not
jurisdictional in nature under Fed. R. Civ. P. 12(b)(1), but is rather an element of the merits addressed
under a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim."  *Lerner v. Fleet Bank, N.A.*, 318 F.3d
113, 129-30 (2d Cir. 2003).  Consequently, the Court will treat this as a motion brought solely under Fed.
R. Civ. P. 12(b)(6).

The following facts are taken from the Third Amended Complaint and accepted as true for purposes of deciding this motion. Plaintiffs own a residence in Putnam County, New York. 3rd Am. Compl. ¶ 5. Defendants, who do business as Tom Allen Excavating, are residents of Philipstown in Putnam County. *Id.* ¶¶ 6, 10, 11. Defendants are co-owners, principals, and/or investors in Tom Allen Excavating, contributing capital to the business and/or receiving compensation therefrom. *Id.* ¶¶ 7, 10.

Defendants[2] solicited several projects from Plaintiffs, consisting of the excavation and creation of a private road/driveway ("Road Contract" or "Project"), as well as the excavation of three building sites and three related septic fields ("House A Contract," "House B Contract," and "House C Contract"). *Id.* ¶¶ 26-27 & Exs. 1-4. Defendants fraudulently misrepresented that they had done this kind of work before. *Id.* ¶¶ 28-30. In October and November 2006, Defendants mailed copies of the four proposed contracts to Plaintiffs. *Id.* ¶ 31. Defendants requested a deposit before doing work. *Id.* ¶ 34.

In January 2007, Plaintiffs gave Defendants a deposit of $20,160. *Id.* ¶¶ 35-36. Defendants stated falsely that the Project would be completed by March 1, 2007. *Id.* ¶ 37. Thereafter, Plaintiffs and Defendants (Bjorn Holubar and Tom Allen) had a number of telephonic communications concerning the Project and how it was progressing. *Id.* ¶¶ 38-43. Plaintiffs entered into a real estate transaction with Michael and Judy Colamarino based on the representation that the Project would be completed, or at least passable, by March 1, 2007. *Id.* ¶¶ 44-46. Based on Tom Allen's telephonic representations, Plaintiffs paid Defendants $30,000.

_____

[2]The Court uses the term "Defendants," since the Third Amended Complaint states that "Defendants collectively are referred to as 'Defendants' or 'Allen.'" *Id.* ¶ 18. However, the Third Amended Complaint uses the singular noun "he" in referring to Allen, and most references to "Allen" appear to be to Tom Allen alone. *See, e.g., id.* ¶¶ 28-30, 38, 47, 47a.

*Id.* ¶ 47.

Prior to March 1, 2007, Defendants sought to have Plaintiffs enter into the House Contracts and pay the first of the three deposits, with the other two House Contract deposits to be due in March and April. *Id.* ¶ 48. Plaintiffs told Defendants that the deposit would be provided when the Project had made further progress, and the road was passable. *Id.* As the Project was neither passable nor completed on March 1, 2007, Defendants were requested to cure the breach. *Id.* ¶¶ 49-50. As of April 1, 2007, the Project was neither passable nor completed, and Defendants were requested to cure the breach. *Id.* ¶¶ 51-52.

Also in April 2007, Defendants undertook home improvements not set forth in the contract between the parties, which consisted of the construction of a stone retaining wall, including back filling the wall with dirt and top soil and grading and raking the back filling for grass seeding. *Id.* ¶¶ 53-55. Defendants failed either to construct or back fill the wall fully. *Id.* ¶¶ 55a-b. In connection with the construction of the stone wall, Defendants were to transfer stones and rocks from an adjoining parcel of land, however, Defendants failed to do so in a timely manner. *Id.* ¶¶ 56-56a. Consequently, the adjoining landowner reconsidered and decided to keep such stones and rocks, thus requiring Plaintiffs to purchase stones and rocks. *Id.* ¶ 56a. Defendants were paid for this home improvement work, but failed to complete any of it. *Id.* ¶ 57. As of May 1, 2007, the Project was neither passable nor completed, and Defendants were requested to cure the breach. *Id.* ¶¶ 58-59. Defendants stated that the Project would be completed by the June 6, 2007 New York State Department of Transportation permit expiration date. *Id.* ¶ 60. As of June 6, 2007, the Project was neither passable nor completed. *Id.* ¶ 62.

3

Defendants refused to work further on the Project, stating that they[3] underbid the Project and that it required more money. *Id.* ¶ 63. Defendants requested to use the House Contract deposits for the Road Contract construction. *Id.* ¶ 64.

Tom Allen told Julius White[4] and Bjorn Holubar that he needed advances on the House Contract deposits since he ran out of money from the Road Contract and was "counting on them to pay [his] bills and bulldozer loan payments." *Id.* ¶ 65. Defendants then refused to work further on the Project since they did not have the proper equipment or enough manpower to complete the Project. *Id.* ¶ 66. Defendants were again put on notice of their breach. *Id.* ¶ 67. It was then discovered that Defendants had removed natural resources from Plaintiffs' property. *Id.* ¶ 68.

Because the Project was incomplete and impassable, real property sales were lost with interested parties from Connecticut, New Jersey, Long Island, and New York City. *Id.* ¶ 69. To mitigate Defendants' breach, Plaintiffs solicited bids from other potential excavators, and a replacement contractor was retained for a price in excess of that agreed to by Defendants. *Id.* ¶¶ 70-71. It was later discovered and confirmed that Defendants were negligent in the work that they did do since it was not in compliance with either the engineer's plans, the New York State Department of Environmental Conservation requirements for water control, or the New York State Department of Environmental Conservation requirements for erosion control. *Id.* ¶¶ 72-74. It was also later discovered and confirmed that Defendants were negligent in the work that they

---

[3]Again, Allen is referred to as "he" in this paragraph (¶ 63) and subsequent paragraphs (¶¶ 64-66) of the Third Amended Complaint.

[4]While not identified in the Third Amended Complaint, Julius White was apparently the project manager for the work being done on Plaintiffs' property. *See* Mem. in Opp. to Defs.' Mot. to Dismiss [Doc. # 14] at 8.

did do since they did not comply with the Project prerequisite of confirming the non-existence of underground electrical and utility connections. *Id.* ¶ 75. It was later discovered and confirmed that Defendants had fraudulently induced Plaintiffs into entering into a contract as they had never completed a Project of this design or size. *Id.* ¶ 76.[5] Additional actions have been taken in an attempt to mitigate and/or address the damage caused by Defendants, all of which have required expenditures of time, resources, and money above and beyond the price set forth in Defendants' contract. *Id.* ¶¶ 77-78.[6]

Based on the foregoing, the Third Amended Complaint asserts ten claims, two federal claims under the RICO statute, and eight state law claims. With respect to the RICO claims, Plaintiffs make additional legal allegations – that each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3); and that Tom Allen Excavating is an "enterprise," and Defendants constitute an association-in-fact enterprise, both within the meaning of 18 U.S.C. § 1961(4). *Id.* ¶¶ 20, 23, 24. Plaintiffs also allege that Defendants committed predicate acts of racketeering comprised of mail and wire fraud. *Id.* ¶ 25.

Having previously moved to dismiss Plaintiffs' First Amended Complaint (*see* Doc. #'s 9, 14, 16, 17), Defendants renew their motion and move to dismiss the Third Amended Complaint in its entirety.

---

[5]While the Third Amended Complaint is unclear on this point, it appears that the House Contracts were neither executed nor performed in any way. Rather, the Third Amended Complaint refers to the "Project," which is defined at paragraph 27 as the Road Contract.

[6]This is presumably referring to the Road Contract.

5

## DISCUSSION

### I.  Applicable Legal Standard

In deciding a motion under Fed. R. Civ. P. 12(b)(6), the court must "accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff."  *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (citation omitted).  Nonetheless, "[i]n order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'" *Id.* at 111-12 (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).  "[P]laintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (internal quotation marks and citations omitted).

While ordinarily the allegations of a *pro se* complaint are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*per curiam*), Plaintiff Bjorn Holubar is a practicing attorney.  Thus, he cannot claim the special consideration customarily granted to *pro se* parties.  *See Harbulak v. County of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981).

### II.  Failure to State a Claim

Plaintiffs assert two RICO claims under 18 U.S.C. §§ 1962(c) and 1962(d), respectively. Section 1962(c) of the RICO statute states that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  Section 1962(d) states that

6

"[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection

(a), (b), or (c) of this section."

      "Under any prong of § 1962, a plaintiff in a civil RICO suit must establish a 'pattern of

racketeering activity.'  The plaintiff must plead at least two predicate acts, *see* § 1961(5), and

must show that the predicate acts are related and that they amount to, or pose a threat of,

continuing criminal activity."  *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 465

(2d Cir. 1995) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  "[A]

plaintiff in a RICO action must allege either an 'open-ended' pattern of racketeering activity

(*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a 'closed-ended'

pattern of racketeering activity (*i.e.*, past criminal conduct 'extending over a substantial period of

time')."  *Id.* at 466.

### *Open-Ended Continuity*

      With respect to open-ended continuity, Second Circuit cases assess the threat of

continuity by looking first to "the nature of the predicate acts alleged or to the nature of the

enterprise at whose behest the predicate acts were performed."  *GICC Capital Corp.*, 67 F.3d at

466 (citations omitted).  "Where the enterprise is engaged primarily in racketeering activity, and

the predicate acts are inherently unlawful, there is a threat of continued criminal activity, and

thus open-ended continuity."  *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d

229, 242-43 (2d Cir. 1999) (citing *H.J. Inc.*, 492 U.S. at 242-43).  However, where, as in this

case, "the enterprise primarily conducts a legitimate business, there must be some evidence from

which it may be inferred that the predicate acts were the regular way of doing business, or that

the nature of the predicate acts themselves implies a threat of continued criminal activity."  *Id.* at

243 (citations omitted).

Plaintiffs fail to assert any facts from which it may be inferred that the alleged acts of mail and wire fraud committed in connection with their contracts were the "regular way" that Defendants conducted their excavating business.  Nor does the nature of the predicate acts or the scheme alleged by Plaintiffs imply a threat of continued criminal activity.  Plaintiffs allege that "[b]eginning no later than October 2006 through and until termination of defendants in June 2007 the defendants engaged in and devised a fraudulent scheme to secure and defraud the Holubars of monetary resources and abscond with the Holubars' natural resources."  3rd Am. Compl. ¶ 86.  The fraudulent scheme revolved around "several interrelated projects from the Holubars . . . consist[ing] of the excavation and creation of a private Road/driveway as well as the excavation of three (3) building sites and the three (3) related septic fields," evidenced by four contracts which are appended to the Third Amended Complaint.  *Id.* ¶¶ 26-27 & Exs. 1-4.[7] However, such a limited scheme, aimed only at Plaintiffs and the contracts for projects on their property, "cannot transform an otherwise legitimate business into a business regularly conducted through criminal conduct."  *Watral v. Silvernails Farms, LLC*, 177 F. Supp. 2d 141, 150 (E.D.N.Y. 2001), *aff'd*, 51 F. App'x 62 (2d Cir. 2002).

Plaintiffs argue that open-ended continuity exists based on their allegation that

---

[7]Notably, the parties signed only one of the four contracts appended to the Third Amended Complaint (although the signature page to the House C Contract is missing), *see* 3rd Am. Compl. Exs. 1-4 (only the Road Contract is signed), nor does it appear that Plaintiffs ever executed the House Contracts. *See id.* ¶ 48 ("Prior to March 1, Allen requested the entry of the 'House Contracts' and payment of 1 of the 3 deposits, with the subsequent two (2) House Contract deposits being due in March and April.  Allen was informed that the same would be provided when the Road Contract was advanced and the road passable.").  Plaintiffs also allege the inadequate performance of an unwritten agreement for certain "home improvements," *id.* ¶¶ 53-57, but they make no allegations that any predicate acts were committed in connection with such agreement.

"[b]etween October 2006 and June 2007 defendants' [sic] fraudulently induced a slow bleeding

of Plaintiffs' liquid assets and theft of raw materials, that occurred for at least eight (8) months –

and only 15% of the initial 'road' project completed a rate that – but for termination –

extrapolates into 48 months for the initial project alone.  Thus, defendants' fraud, theft and

*method operandi* would have continued well into the indefinite future."  3rd Am. Compl. ¶ 87

(footnote omitted); *see also id.* ¶ 89 ("But for termination, defendants' predicate acts and

criminal activity would have extended indefinitely into the future.").[8]  Putting aside the

speculative nature of this allegation, it is clear that the projects undertaken by Defendants on

Plaintiffs' property, assuming that Plaintiffs would have agreed to have Defendants proceed on

the "House Contracts," would have ultimately, definitively ended.  "The open-ended continuity

requirement can only be satisfied by an ongoing future threat with no foreseeable endpoint."

*Lefkowitz v. Bank of New York*, No. 01 Civ. 6252, 2003 WL 22480049, at *9 (S.D.N.Y. Oct. 31,

2003), *aff'd in part, rev'd in part & remanded*, 2007 WL 1839756 (2d Cir. June 28, 2007).

Certainly, the time would have come when the work on Plaintiffs' property that Plaintiffs had

contracted with Defendants to do would have ended, and at that point, the alleged threat of future

criminal activity would have likewise come to an end.

        In sum, the alleged scheme, concerning only a finite number of projects on Plaintiffs'

property, was "inherently terminable," *GICC Capital Corp.*, 67 F.3d at 466, and it did terminate

when Plaintiffs ended their contractual relationship with Defendants.  Consequently, Plaintiffs

fail to satisfy the requirements for pleading open-ended continuity.  *See Watral*, 177 F. Supp. 2d

---

[8]Similarly, the plaintiff in *GICC Capital Corp.* attempted to establish a threat of continuity by alleging that one of the defendants would have continued its misconduct had the plaintiff not commenced litigation.  67 F.3d at 466.  The Second Circuit, however, found such claim "entirely speculative."  *Id.*

at 150-51 (no open-ended continuity where defendants' scheme was limited to plaintiff and necessarily came to an end when plaintiff discovered the scheme and terminated his relationship with defendants); *see also Lefkowitz*, 2003 WL 22480049, at *8 ("Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of a closed or open pattern of continuity.") (footnote omitted).

### *Closed-Ended Continuity*

Plaintiffs do not argue in opposition to the motion that they have sufficiently alleged closed-ended continuity and, in any event, such argument would fail. "To satisfy closed-ended continuity, the plaintiff must prove 'a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months . . . do not satisfy this requirement.' Since the Supreme Court decided *H.J., Inc.*, this Court has never held a period of less than two years to constitute a 'substantial period of time.'" *Cofacredit*, 187 F.3d at 242 (citations omitted). In their Third Amended Complaint, Plaintiffs allege that "[t]his pattern of racketeering activity began in or about October 2006 and the above criminal acts continue to June 2007 until the Holubars' [sic] terminated relations with Allen otherwise these acts would have continued into the indefinite future. 18 U.S.C. § 1961(5)." *Id.* ¶ 84. A period of eight months is not a substantial period of time sufficient to establish closed-ended continuity. *See GICC Capital Corp.*, 67 F.3d at 468 (citing cases).

The Second Circuit has also noted that "[a]lthough closed-ended continuity is primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in

10

determining whether closed-ended continuity exists." *Cofacredit*, 187 F.3d at 242 (citation

omitted). None of these other factors support a finding of closed-ended continuity in this case.

Here, the scheme alleged in the Third Amended Complaint was aimed solely at Plaintiffs and

involved the execution of a single plan concerning a finite number of projects on their property.

There are no allegations that there was a broad-based scheme aimed at a variety of clients for

whom Defendants did excavation work. The scheme in question ended upon its discovery and

Plaintiffs' termination of their contracts with Defendants. Consequently, Plaintiffs cannot

establish closed-ended continuity. *See GICC Capital Corp.*, 67 F.3d at 468 (no closed-ended

continuity where activities alleged involved small number of participants and no other identified

victims); *Watral*, 177 F. Supp. 2d at 150 (no closed-ended continuity where the alleged scheme

"was aimed at a single victim and involved the carrying out of a single plan").

### *RICO Conspiracy*

Because Plaintiffs fail to state a claim for a substantive RICO violation under § 1962(c),[9]

their RICO conspiracy claim under § 1962(d) should be dismissed. *See Discon, Inc. v. Nynex

Corp.*, 93 F.3d 1055, 1062-63 (2d Cir. 1996) ("Since we have held that the prior claims do not

state a cause of action for substantive violations of RICO, the present claim does not set forth a

conspiracy to commit such violations.") (citations omitted), *vacated on other grounds*, 525 U.S.

128 (1998).

### III.    <u>State Law Claims</u>

Because I recommend dismissal of Plaintiffs' RICO claims, I recommend that the Court

---

[9]Having found Plaintiffs' RICO claim under § 1962(c) deficient for failure to establish either open-ended or closed-ended continuity, I need not address Defendants' other arguments for dismissal of Plaintiffs' RICO claims.

decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and that those claims be dismissed as well.  *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006); *Weathers v. Millbrook Cent. Sch. Dist.*, 486 F. Supp. 2d 273, 275-76 (S.D.N.Y. 2007).

## **CONCLUSION**

For the foregoing reasons, I recommend that Defendants' motion be granted and, since Plaintiffs have already had the opportunity to amend their complaint three times, the action be dismissed with prejudice.

## **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ. P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Stephen C. Robinson, at the United States Courthouse, 300 Quarropas Street, White Plains, New York 10601 and to the chambers of the undersigned at this Courthouse, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge Robinson.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); *Wesolek*

*v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988).  Requests for extensions of time to file

objections must be made to Judge Robinson and should *not* be made to the undersigned.

Dated: April 2⁴ 2008
       White Plains,  New York

                                        Respectfully submitted,

                                        _____
                                        MARK D. FOX
                                        UNITED STATES MAGISTRATE  JUDGE

Copies of the foregoing have been sent to the following:

Honorable Stephen C. Robinson, U.S.D.J.

Michelle and Bjorn Holubar
Plaintiffs *Pro Se*
575 Madison Avenue, 10th Floor
New York, NY 10022

John H. Hersh, Esq.
Attorney for Defendants
First Federal Building
Peekskill, NY 10566